206 P.2d 1041

## ASSOCIATED DAIRY PRODUCTS CO. v. PAGE et al.

No. 5158.

Supreme Court of Arizona.

June 6, 1949.

Snell, Wilmer, Walsh & Melczer, of Phoenix, for appellants.

David J. Marks, County Attorney, of Bisbee Wesley E. Polley, Chief Deputy County Attorney of Bisbee, for appellees.

PHELPS, Justice.

This is an appeal from a declaratory judgment of the Superior Court of Cochise County involving the validity of an ordinance enacted by the board of supervisors of said county designated as a "Public Health Service Milk Ordinance." The question presented for the determination of the court is: Did the board of supervisors have the authority under the law to enact said ordinance?

The facts in the case are that the board of supervisors enacted said ordinance on August 4, 1947, the purpose clause thereof being as follows: "An ordinance defining 'milk' and certain 'milk products', 'milk producer', 'pasteurization', etc., prohibiting the sale of adulterated and misbranded milk and milk products, requiring permits for the sale of milk and milk products, regulating the inspection of dairy farms and milk

plants, the examination, grading, labeling, placarding, pasteurizing, regrading, distribution, and sale of milk and milk products, providing for the publishing of milk grades, the construction of future dairies and milk plants, the enforcement of this ordinance, and the fixing of penalties."

While the ordinance is broader in scope than that indicated by the purpose clause above quoted, we feel that further details thereof are not essential to the solution of the issues involved.

The appellants are engaged in various aspects of the business of producing, purchasing, processing, selling, and distributing milk and other dairy products in Arizona. Some of the appellants reside, and are engaged in business in Cochise County and furnish the greater part of the outlet in that county for said milk and milk products produced and processed largely in Maricopa and Pinal Counties.

It is alleged in the complaint that by reason of the enactment of said ordinance, a controversy has arisen between the appellants and the board of supervisors, hereinafter called the board, and that prosecution is threatened under the penal provisions of the ordinance unless appellants comply therewith. Appellants alleged that the board was without jurisdiction or authority to enact the ordinance. The board and other appellees have interposed as their answer to appellants what amounts to a general denial. In their briefs, however, they claim that the board acted entirely within its power in enacting said ordinance, and that section 17-309, A.C.A.1939, clearly delegates to said board the power to pass such ordinance. After a stipulation narrowing the issues between the parties litigant, both appellants and appellees moved for judgment on the pleadings. The court, after having taken the matter under advisement, denied appellant's motion and granted the motion of the appellees. Thereafter judgment was entered upholding the validity of said ordinance.

In considering the question of whether or not the board had the authority, under the law, to enact such an ordinance, we feel that the issue should be approached with the fundamental principle of law in mind that the constitution of Arizona, article 4, part 1, section 1 thereof, vests the legislative authority of the state in a legislature consisting of a senate and a house of representatives, reserving however, to the people the right of initiative and referendum.

The boards of supervisors of the various counties of the state have only such powers as have been expressly or by necessary implication, delegated to them by the state legislature. Hartford Accident and Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328; Maricopa County v. Southern Pacific Co., 63 Ariz. 342, 162 P.2d 619. Implied powers do not exist independently of the grant of express powers and the only function of an implied power is to aid in carrying into effect a power expressly granted. Therefore, unless there has been

an express grant of power by the legislature to the board to enact the ordinance here involved, it must be held to be invalid, regardless of whether the subject of said ordinance is of local or state-wide concern.

We said in the case of Clayton v. State (on rehearing), 38 Ariz. 466, 300 P. 1010, that: " * * * Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city *express* power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is one of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state." (Emphasis supplied.)

We reaffirmed this rule in the case of Keller v. State, 46 Ariz. 106, 47 P.2d 442. It will be observed that these cases were discussing the legislative powers of municipalities and not of boards of supervisors.

■■ In the case of Hartford Accident and Indemnity Co. v. Wainscott, supra, this court recognized a distinction between powers and liabilities of a county and ordinary municipal corporations such as towns and cities, the reason assigned being that towns and cities are voluntary corporations organized on the initiative and by the approval of the inhabitants for special and local purposes independent of the general governmental activities of the state and inure to the benefit of said cities and towns as distinguished from that of the state, while counties are created by the legislature regardless of the wishes of the inhabitants of the area for the purpose of exercising a certain portion of the general powers of the government in specified localities, citing Board of Commissioners of Jasper County v. Allman, 142 Ind. 573, 42 N.E. 206, 39 L.R.A. 58.

■ While we have stated the distinction between the powers and liabilities of counties and cities and towns, we will disregard such differences in discussing the issues here presented in order to give the most favorable view to the position of the appellees herein. The question of public health is so clearly one of statewide concern that no citation of authorities should be necessary to support it. We stated in Gardenhire v. State, 26 Ariz. 14, 221 P. 228, 230: "That the preservation of the public health is a matter of public and governmental concern was recognized by the Legislature of the territory of Arizona, when, in 1903 (chapter 65, Laws of 1903), there was enacted a law providing for state, county and city boards of health * * *."

Certainly any product designed for human consumption placed upon the markets of the state which may contain germs that are injurious to the health or bring about an epidemic of contagious disease is one of state-wide interest, and it is the concern of the state in the exercise of its police powers to see that such steps are taken

as may be necessary to protect the health of its citizenry.

■ The question then presents itself: Has the state legislature appropriated the field to the exclusion of boards of supervisors? This question finds an affirmative answer in the provisions of chapter 82, Laws of the Regular Session, 1931 Legislature, sections 50-901 to 50-954 inclusive, A.C.A.1939. An examination of this act discloses that it is designed to provide a complete coverage of the matter of production and processing of milk and milk products in Arizona, placing such restrictions thereon as the legislature deemed necessary to protect the public health. There is to be found in this law provisions (stated in different and less restrictive language) substantially covering every phase of the production and processing of milk that is to be found in the ordinance itself. We therefore hold that the legislature has fully occupied the field to the exclusion of boards of supervisors by enacting legislation relating to the production and processing of milk deemed by it to be necessary for the protection of the public health unless it has plainly, directly, and explicitly conferred upon such boards express power to enact the ordinance in question. Has the legislature done this?

Appellees rely upon the following provisions of section 17-309, A.C.A.1939 to sustain their contention that said ordinance is valid:

"* * *.—The board of supervisors, under such limitations and restrictions as are prescribed by law, may:

* * * * * *

"17. Adopt provisions for the preservation of the health of their respective counties as necessary, and provide for the expenses thereof;

* * * * * *

"20. Make and enforce such rules and regulations for the government of their body, the preservation of order and the transaction of business as necessary;

* * * * * *

"22. Do and perform all other acts and things necessary to the full discharge of the duties as the legislative authority of the county government; but a supervisor shall not vote upon any measure in which he, or any member of his family, or partner, may be pecuniarily interested;

"23. Make and enforce all local, police, sanitary and other regulations not in conflict with general laws."

May there be gathered from the language above quoted an express grant of power to the board of supervisors to enact an ordinance regulating the production, processing, distribution and sale of milk and milk products in Cochise County, authorizing inspection by the health officer of Cochise County of herds, dairy barns, milk houses, outhouses and surroundings in other counties of the state, and to prescribe the prerequisites of any new construction or re-

pairs to be made upon such buildings or any part thereof? Is there anything in the language above quoted which even hints at a delegation of authority to the board of supervisors in the counties of this state to pass and enforce criminal legislation?

Subsection 17, supra, grants no such authority. The language is that the board of supervisors has power to adopt provisions for the preservation of health, etc., which simply means that it has the power under the state law to provide for the preservation of health such as authorizing and paying for any medical attention that may be given to a person afflicted with a contagious disease and in Haupt v. Maricopa County, 8 Ariz. 102, 68 P. 525, we held that under the provisions of this section of the act the board of supervisors had the power to contract with a person whose family had been suffering from diptheria, to pay the reasonable market value of his property which they ordered destroyed in order to prevent the spread of diptheria. The court based its decision upon the right of the board to contract for reimbursement for property destroyed. There was no question in that case involving the right of the board to pass ordinances. There is no express authority given in this subsection of the statute to pass an ordinance or legislation of any kind.

Subsection 20, supra, provides only for the board to make such rules and regulations for its own government and for the preservation of order while transacting business of the county. The wildest stretch of the imagination would not justify the finding of express authority to do anything in particular under subsection 22, supra.

Subsection 23 providing that the board may "make and enforce all local, police, sanitary and other regulations not in conflict with general laws" is so general in its nature that it cannot be said that there is express authority in the grant to enact an ordinance relating to the production, processing, distribution and sale of milk.

By the terms "expressly empower" and "express power" as used in the language of the court in the case of Clayton v. State and Keller v. State, supra, is meant that authority which confers powers to do a particular thing set forth and declared exactly, plainly and directly with well defined limits. "An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied, or not directly stated or given." Fergus v. Brady, 277 Ill. 272, 115 N.E. 393, 396, Ann.Cas.1918B, 220, at page 223.

Under the above definition it seems clear that no express power has been granted to the boards of supervisors of the counties of the state to pass an ordinance such as the one in question. We believe the above definition of express authority is conclusive upon the question of the legislative grant here under discussion. Certainly there is nothing in the granting of power in any of

these sections that would warrant the board of supervisors in passing a criminal statute and fixing a penalty for its violation.

Counsel for appellees claim that the case of City of Phoenix v. Breuninger, 50 Ariz. 372, 72 P.2d 580, and the case of Gardenhire v. State, supra, are authority for the board of supervisors to enact the ordinance in question. It will be observed that in the Breuninger case, supra, in addition to the recognition by the state legislature of the ordinance in the city of Phoenix then existing, regulating the production, processing, sale and distribution of milk, that the city charter of Phoenix expressly granted to the City Commission the power to regulate the production and sale of milk in the city. It was upon this basis that the Supreme Court held the city ordinance to be valid. This is consistent with the rule laid down in Clayton v. State and Keller v. State, supra.

In Gardenhire v. State, supra, Gardenhire was convicted for the violation of a city ordinance of the city of Yuma which provided for the inspection of milk, cream, condensed or evaporated milk or cream, dairies, cows, cow stables, milk houses, milk vessels and vehicles. At the time this ordinance came up for consideration, Yuma was operating under a freeholder's charter and the charter provided that the commission should have authority

"* * * to provide for and · regulate the inspection by the health officer of meats, poultry, fish, game, bread, butter, cheese, lard, eggs, vegetables, breadstuffs, milk and other food products offered for sale in the city, and to provide for the taking and summarily destroying of any such products as are unsound, * * *.

"Sec. 40. To provide for the regulation and inspection of all dairies, slaughterhouses and creameries that offer for sale any of their products to the city."

Again as in the Breuninger case, supra, the Yuma City Commission is granted, under the provisions of the charter, express power to regulate the production, sale, and processing of milk.

As a further reason why the legislature did not intend to give such authority to boards of supervisors we point out that the language employed in the provisions of the statute relied upon by appellees for authority to enact said ordinance should be considered in the light of another section of the statute relating to counties and their powers. Section 17-201, A.C.A.1939, provides:

"Every county is a body politic and corporate, and the name of the county designated in this chapter is its corporate name, by which it must be known and designated in all actions and proceedings. * * *.

"17-202. Powers.—Its powers can be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law. It has the power to sue and be sued; to purchase and hold lands within its limits; to make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers; to make such orders

for the disposition or use of its property as the interests of its inhabitants require, and to levy and collect such taxes for purposes under its exclusive jurisdiction as are authorized by law. * * *."

█ It will be seen from the above that the primary powers of the boards of supervisors in the various counties of the state are to handle the business and financial affairs of the county as an aid to, or an arm of, the state government. Bearing in mind the powers of the county as enumerated under the provisions of section 17-202, supra, providing that said powers should be exercised by the board of supervisors, it would seem logical to conclude that the powers granted to the board under the provisions of section 17-309, supra, must be deemed to have been granted primarily to enable said board to carry into effect the powers granted the counties as bodies corporate. No legislative intent can be gathered from the language used to delegate to the boards of supervisors of the counties of this state the power to enact ordinances such as the one in question here, or to enact criminal statutes or ordinances and to enforce penalties for the violation thereof.

█ Even granting that the boards of supervisors of the counties of the state may enact police and sanitary regulations for the preservation of the health and morals of the county, it certainly has no authority which can have extra-territorial effect such as providing for inspection of cow barns, milk-houses, milk utensils, containers, etc., and to prescribe the architecture in the construction of new barns, milkhouses, etc., outside the county of Cochise under the guise of "its police jurisdiction." It has no police jurisdiction outside the county of Cochise.

The Supreme Court of the United States has repeatedly held that a state has no authority to enact a law, the effect of which operates extra-territorially. Southern Pacific Co. v. State of Arizona ex rel. Sullivan, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; Hall v. De Cuir, 95 U.S. 485, 24 L.Ed. 547; Bowman v. Chicago & N. W. Ry. Co., 125 U.S. 465, 8 S.Ct. 689, 31 L.Ed. 700, and many others. As a corollary to the lack of power of a state to enact extra-territorial legislation, certainly the county is without authority to enact any ordinance purporting to regulate any matter in any other county of the state. Coelho v. Truckell, et al., 9 Cal.App.2d 47, 48 P.2d 697, 701.

To hold otherwise would result in the the absurd situation that inspectors from every county in the state, acting under ordinances imposing different restrictions upon dairies, would be so numerous around a dairy farm and so expensive that dairies could no longer survive nor meet the conflicting requisites of the different counties as to building construction, etc.

We hold, therefore:

1. That insofar as counties are concerned, the protection of public health is a matter of state-wide concern;

2. That the legislature has appropriated the field in regulating the production, processing, sale and distribution of milk and milk products to the exclusion of boards of supervisors;

3. That no express power has been given to the boards of supervisors of the various counties of this state to pass an ordinance such as the one here under consideration.

Since we have found no express grant from the legislature to appellee to enact the ordinance in question which is determinative of the issues presented, we withhold any comment as to the power of the legislature, under the constitution, to delegate legislative powers of such sweeping significance to the governing body of a county, although the issues presented are probably broad enough to justify a consideration of the question.

For the reasons above stated the board of supervisors was wholly without authority to pervisors was wholly without authority to enact such an ordinance. It is absolutely void and the judgment of the lower court is reversed with directions to enter judgment accordingly and that defendants and each of them and their agents be permanently enjoined from enforcing or attempting to enforce such ordinance.

LA PRADE, C. J., and UDALL, STANFORD, and DE CONCINI, JJ., concur.