212 P.2d 91

**LOFTUS v. RUSSELL et al.**

No. 5246.

Supreme Court of Arizona.

Dec. 5, 1949.

Mangum & Flick, of Flagstaff, Mark Wilmer, of Phœnix, for petitioner.

Neil V. Christensen, County Attorney of Coconino County, F. M. Gold, of Flagstaff, for respondents.

Stewart L. Udall, of Tucson, amicus curiae.

LA PRADE, Chief Justice.

At the instance of Lloyd Loftus, petitioner above, there was issued out of this court an alternative writ of prohibition directed to the above-named respondents, The Superior Court of Coconino County, Arizona; H. L. Russell as Judge thereof; and Neil V. Christensen, as County Attorney, commanding them to refrain from taking any further proceedings in a certain criminal case pending in said court wherein the petitioner was being proceeded against by information charging him with unlawfully distributing and causing to be distributed in Coconino County milk and milk products without first obtaining a permit so to do from the County Superintendent of Health as required by Regulation No. 4 theretofore adopted by the Coconino County Board of Health, purportedly pursuant to the provisions of Section 68-205, A.C.A.1939. When the information was filed a warrant of arrest was regularly issued and executed by the sheriff by taking petitioner into custody, after which he was admitted to bail. A motion to quash the information was filed, presented, and denied, the basis of the motion being that the court had no jurisdiction of the offense charged or of the person of the defendant.

Upon denial of this motion the court set the cause for trial, which ruling prompted petitioner to seek the alternative writ in this court. The petition alleges that the respondents assert jurisdiction in the court to continue with the prosecution, and that unless prohibited by the writ sought would proceed with the prosecution "to the great loss, detriment, and damage of petitioner," and "That the real parties in interest herein in addition to Petitioner are milk producers and distributors of Maricopa County and Pinal County, Arizona, and merchants selling milk at retail in Coconino County, Arizona outside of incorporated cities; that Petitioner respectfully alleges that additional prosecutions under said Regulation No. 4 have been instituted in Coconino County, Arizona, by Respondent Neil V. Christensen against grocers and other distributors of milk and that said Re-

spondent threatens to institute further and additional prosecutions under said Regulation."

The petition for the writ further alleges that the court was without jurisdiction in the premises in that the regulation was void and unconstitutional for the following reasons:

"(a) That the same attempts to vary, amend, extend and alter an existing state statute legislating upon the subject matter thereof, to wit: Chapter 50, Article 9, A. C.A.1939;

"(b) For the reason that said Board of Health is without jurisdiction or authority to enact a county-wide ordinance in an attempted exercise of the police power of the State of Arizona;

"(c) That Article 2, Chapter 68, A.C.A. 1939, entirely fails to confer upon said County Board of Health any authority to enact a regulation of the type and character of said Regulation No. 4;

"(d) That any delegation of authority to said County Board of Health under said Article 2, Chapter 68, asserted or claimed to exist conferring upon said County Board of Health authority to enact such a regulation would constitute an unlawful delegation of power in violation of the provisions of the Arizona State Constitution, Article 4, Section 1, thereof;"

Chapter 68 of the 1939 Code, Laws 1941, Ch. 105, Sec. 68-101 et seq., 1939 Code Cum. Pocket Supp., is entitled "Public Health." Article 1 of this chapter is entitled "State Department of Health," Article 2 "Local Boards of Health." The creation, powers, and duties of county boards of health are established in the following sections:

"68-201. *County boards established— Superintendent—Duties.*—The chairman of the board of supervisors, the county attorney and the county superintendent of public health, of each county, shall constitute the county boards of health. * * * The board of supervisors shall appoint a superintendent of public health for the county, who shall be a practicing physician within the county, who shall hold his office for two (2) years and be secretary of the board. * * *"

"68-202. *Powers and duties of boards.* —County boards * * * shall have such other powers, within their respective counties, outside of the corporate limits of cities having a city board of health, subject to the supervisory control of the state board of health, *as have been hereinbefore granted the state board.*" (Emphasis supplied.)

"68-205. *Sanitary regulations—Violations—Penalty—Notice.*—Each city or county board of health, within its jurisdiction, *shall examine into all nuisances, sources of filth and causes of sickness and make regulations regarding the same as are necessary for the public health and safety of the inhabitants.* A person violating any published order or regulation, made by a board of health, shall be guilty of a misde-

meanor and punished by a fine of not exceeding one hundred dollars ($100), or by imprisonment not exceeding thirty (30) days, or both. * * *" (Emphasis supplied.)

It will be noted that the authority conferred in this last-named section is to adopt regulations concerning nuisances, sources of filth, and causes of sickness, as are necessary for the public health and safety of the inhabitants. In addition to this specific grant of authority there is the grant by reference contained in Section 68-202, supra, conferring upon county boards of health within their respective counties, outside of the corporate limits of cities having a city board of health, the powers theretofore granted to the State Board of Health. This regulation of the County Board of Health under consideration was adopted September 28, 1946. At this date, Article 1 of Chapter 68, A.C.A.1939, relative to the State Board of Health had been repealed and a new law enacted. See Chapter 105, Laws 1941. Section 2 of this last-named chapter was again amended in 1947, 2nd S.S., Chapter 22, Section 1, same now appearing in the 1939 Cum. Pocket Supp. as Section 68-108, reading as follows:

"68-108. *State department of health.*— The state department of health shall consist of the state board of health, the superintendent of public health, and the several divisions of the department, including the state welfare sanatorium. The department shall succeed to and is hereby vested with the duties, powers, purposes, responsibilities, and jurisdiction heretofore by law vested in and imposed upon the state board of health, the superintendent of public health, the state registrar of vital statistics, the supervisor of public health nursing, the state laboratory, the director of the state laboratory, the board of regents of the University of Arizona relating to the state laboratory and the director thereof."

The rule-making authority granted to the State Department of Health was contained in the Laws 1941, Chapter 105, Section 6, now Section 68-112, Cum. Pocket Supp. Subdivision (a) of this section provides: "(a) The board shall have power to adopt, promulgate, repeal, and amend rules and regulations consistent with law to: 1. define and control communicable diseases; 2. prevent and control public health nuisances; 3. regulate sanitation and sanitary practices in the interests of public health; 4. cooperate with local boards of health and health officers; 5. protect and promote the public health and prevent disability and mortality; 6. isolate any person affected with and prevent the spread of any contagious or infectious disease; 7. govern the transportation of dead bodies; 8. establish quarantine; and, 9. carry out the purposes of this act."

With this résumé relating to the creation and powers of county boards of health, we shall now proceed to examine what the

county board did and the basis for the present attempted prosecution of petitioner. The adopted regulation is entitled:

"Regulating the Production, Transportation, Processing, Handling, Bottling, Examination, Grading, Labeling, Regrading and Sale of Milk and Milk Products, the Inspection of Dairy Herds, Dairies and Milk Plants, the Issuing and Revocation of Permits to Milk Producers and Distributors, Placarding of Restaurants and Other Establishments Serving Milk or Milk Products and the Fixing of Penalties."

Section 1 of the regulation in part provides: "Section 1. Production, *transportation,* processing, handling, bottling, examination, grading, labeling regrading and sale of all milk and milk products, sold for ultimate consumption within the County of Coconino or its jurisdiction, the inspection of dairy herds, dairies and milk plants, *the issuing* and revocation of permits to milk producers and *distributors,* placarding of restaurants and other establishments serving milk or milk products and the fixing of penalties *shall be regulated in accordance with the provisions of the unabridged form of 1939 issue of the United States edition of Public Health Service Milk Ordinance, * * *.*" (Emphasis supplied.)

Section 2 defines three grades of raw milk and three of pasteurized milk, and then provides that no milk or milk products shall etc., except grades A, B, C, raw or pasbe sold to final consumer or to restaurants,

teurized, and that when any milk distributed fails to qualify for one of the above grades the health officer is authorized to revoke the permit, or degrade the milk, etc. Section 3 declares the violation of any provision of this regulation to be a misdemeanor.

The 1939 issue of the United States Edition of Public Health Service Milk *Ordinance* adopted by reference in the regulation is printed on seventeen pages of Public Health Bulletin No. 220. Section 1 of Part II contains definitions; 13 different kinds of milk and milk products as defined. Additional definitions define: milk producers; distributors; dairies; health officers; average bacterial plate counts, etc. Other sections prohibit the sale of adulterated, misbranded, or ungraded milk or milk products; require permits to handle milk products; relate to labeling and placarding; inspection of dairy farms and milk plants for the purpose of grading or regrading; diseases in cattle; construction of dairy barns, milk houses, etc.; personnel; health, pasteurization, etc.; milk and milk products from points beyond the limits (out of county) of routine inspection; future dairies (hereafter constructed) and milk plants; enforcement and interpretation; penalties; repeal and date of effect of the ordinance, together with an *unconstitutionality* clause.

In 1931, Laws 1931, Chapter 82, the state legislature enacted a complete dairy production, manufacture, handling, sale, code relating to dairies and dairy products,

transportation, etc., running the full gamut, beginning before the milk is taken from the cow through to the ultimate consumer. This law is contained in thirty-eight pages of the 1931 Session Laws. This 1931 code is now contained in Article 9, Chapter 50, A.C.A.1939, Sections 50-901 through 50-954. By reference to Cum.Pocket Supp. it can be seen that many of these sections have been repealed, amended, and re-enacted. At the time the regulation under consideration was adopted there was in effect Section 50-906 which has since been amended by Chapter 54, Laws 1949. Section 50-906 prior to amendment provided for the *licensing of dairy products distributors by the state dairy commissioner* (this provision not affected by the amendment); that no person should operate a dairy products plant or business without such a license; and for a temporary license, a final license and for yearly renewal thereof. It further provided that no license should issue until the dairy commissioner had inspected the premises and equipment of the distributing plant or business and had found that the same met all the requirements of the state law.

With the factual situation and the statutory law applicable before it, should the trial court have insisted on retaining jurisdiction of the criminal prosecution and, more specifically, should this court have issued the alternative writ of prohibition directing the court to desist, and what disposition should be made of it? By way of return to the writ respondents filed a motion to dismiss the petition for the writ and an answer, the basis of the motion being that the petition fails to allege that there is no plain, speedy, or adequate remedy at law available to the petitioner. This motion to dismiss being in the nature of a demurrer to the petition is authorized by subdivision 3, Rule II, Rules of the Supreme Court in that it attacks the sufficiency of the allegations of the petition.

The pleading of the conclusion in so many words that petitioner had no plain, speedy, and adequate remedy at law would not in itself suffice to indicate that the writ should issue. (Such is the rule in equity pleading, 19 Am.Jur., Equity, Section 224.) Under modern rules of pleading, substance rather than legal forms or expressions furnish the basis for relief. White v. Davidson, 46 Ariz. 1, 46 P.2d 1073. Having necessarily pleaded facts justifying the issuance of the writ it appears to us that the petition was not defective in its failure to plead conclusions. If the facts pleaded failed to show a cause cognizable for the application of the extraordinary remedy of prohibition, the writ should not issue and a want of sufficient facts would not be cured by an allegation of no adequate remedy at law.

The petition challenged the constitutionality of the regulation; showed that petitioner and others were being proceeded against by criminal prosecutions; and that he had challenged the jurisdiction

of the court over the subject matter to no avail. It is apparent from the petition that his personal and property rights were being infringed if the regulation had been adopted without authority of law. The petition clearly demonstrates that petitioner and others similarly situated were to be subjected to a multiplicity of prosecutions to such an extent that the acts of the court were oppressive. At the time the alternative writ issued we took cognizance of our previous decisions; e. g., Globe School Dist. No. 1 v. Board of Health, 1919, 20 Ariz. 208, 211, 179 P. 55 and Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041, decided June 6, 1949 (7 days before the information was filed in this case). In the Globe case it was adjudicated that a city board of health has no legislative power to enact *any* laws (specifically it was prohibited from declaring what is or is not a nuisance). The holding in the Globe case as to the constitutionality of the regulation here under consideration is applicable, and thoroughly demonstrates that the County Board of Health was without power to enact the regulation (law) as we shall more specifically point out. The failure of the trial court to adhere to the previous decisions of this court is an element to be considered in determining that prohibition is a proper remedy where multifarious prosecutions are manifest. Hughes v. Recorder's Court, of Detroit 75 Mich. 574, 42 N.W. 984, 4 L.R.A. 863, 13 Am.St.Rep. 475.

By subdivision 1 of Rule II, Rules of Supreme Court, it is provided that: "* * * In case any court, judge or other officer, or any board or other tribunal in the discharge of duties of a public character, be named in the application as respondent, the affidavit or petition shall also disclose the name or names of the real party or parties, if any, in interest, or whose interest would be directly affected by the proceedings."

The petition here complies with this rule for it specifically alleges that the real parties in interest are milk producers and distributors of Maricopa and Pima Counties, merchants and grocers selling milk at retail in Coconino County outside of incorporated cities, and that prosecutions had been initiated and others threatened by the county attorney against grocers and distributors. The interests of all of these individuals had been or were to be directly affected by enforcement of these regulations by criminal prosecutions.

Whatever may be the rule elsewhere if in the preliminary stages of litigation it is shown to this court that the trial court is without jurisdiction to proceed this court will prevent the needless waste of time and money of the court and litigants, their harassment, and a resulting disruption of the economic well-being of the community by the use of this special writ, as it has done heretofore. See Redewill v. Superior Court 43 Ariz. 68, 70, 29 P.2d 475; Van Dyke v. Superior Court,

24 Ariz. 508, 211 P. 576; Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842. Such procedure does not involve the correction of error within jurisdiction, but prevents the assumption of jurisdiction when it does not exist. Rescue Army v. Municipal Court of City of Los Angeles, 28 Cal.2d 460, 171 P.2d 8.

Respondents by their answer admitted the truth of the substantial averments set forth in the petition and are here respectfully contending that the County Board of Health had the power to pass the regulation and are asserting the jurisdiction of the court, their right and duty to proceed in the enforcement of the regulation.

Respondent's position is:

"I. That the question raised by petitioner as to the unlawful delegation of power to the Coconino County Board of Health by the state legislature was not presented to the trial court and cannot, therefore, be raised for the first time by peitioner in an application before the Supreme Court."

"II. That, although public health is a matter of statewide concern, the legislature may, nevertheless, delegate specific powers to county boards of health to enact regulations within the limits defined by the statute granting that right regarding causes of sickness and, incidental thereto, regulations regarding the production and distribution of milk."

"III. That the regulation therein set forth is valid for the reason that the legislature has, by proper statute, conferred power upon county boards of health to inquire into causes of sickness and, incidentally, to pass regulations regarding the production and distribution of milk."

"IV. That the Board of Health of Coconino County, Arizona, was, when it enacted said Regulation No. 4, acting in an administrative capacity, rather than a legislative capacity and merely putting into execution the directive of the legislature outlined and patterned in Paragraph 68-205, A.C.A.1939; the penalty for violation of said regulation being set forth in said statute."

Point 1 of the answer to the effect that petitioner may not raise in this court the asserted unlawful delegation of power to the County Board of Health, not having presented it to the lower court, is without merit. The motion attacking the power of the trial court to proceed on the question of the court's jurisdiction was sufficiently broad to encompass the question, though it was not argued. Be that as it may, respondents' position in this behalf has been determined adversely to them by this court in Conkling v. Crosby, 29 Ariz. 60, 239 P. 506, 510, where it was held: "* * * that where a judge as respondent to the writ appears in response to the rule to show cause and affirms the right of himself or of his court to proceed with

the matter in hand, it then becomes unnecessary to show that objection to the jurisdiction was taken in such inferior court." (Citing cases.)

▇▇▇ Referring to respondents' answer and particularly paragraphs designated as II, III, and IV, supra, it seems to be their position that the milk "regulation" promulgated by the board is merely a regulation or code of directives adopted to aid and assist it in the administration of the health laws of the state, and that this regulatory power is specifically conferred by Sections 68-202 and 68-205, supra. In the former section county boards of health have all the powers granted to the state board. In the latter section they have power to "examine into all nuisances, sources of filth and causes of sickness, and make regulations regarding the same as are necessary for the public health and safety of the inhabitants." The power of the State Board of Health (State Department of Health) conferred on the county board is contained in Section 68-112, supra. These powers of the state and local boards, both city and county, are limited to the making of regulations or rules implementing existing statutes. No power is conferred to enact laws or ordinances. These applicable statutes relating to health and sanitation are not materially different from the prevailing statutes in the 1913 Code, and were considered in Globe School Dist. No. 1 v. Board of Health, supra. The holding therein made is just as applicable to-day as it was then. The court said [20 Ariz. 208, 179 P. 57]:

"To concede that any board of health has been delegated the legislative power to declare what is or what is not a nuisance is to concede that boards of health may be delegated legislative power, and this cannot be done. * * *

* * * * * *

" * * * Their powers extend to matters administrative in their nature and which pertain to the execution and enforcement of the health laws of the state for the protection of the public health and safety. It is clear that the local boards were intended by the Legislature to have and exercise within their respective jurisdictions identical duties and powers. Such boards have no authority conferred upon them to legislate. They are granted power within their jurisdiction to make rules and regulations to facilitate the enforcement of the health laws, and in exercising such powers they may adopt such measures as are reasonable, to carry out such health laws according to the true spirit and intent of the Legislature.

"In order to call forth the exercise of such powers, and as an incident to such powers, the local boards of health are granted the power to determine the fact whether the emergency exists for the making of rules and regulations and the adoption of health measures, but such powers are administrative—not legislative. * * * "

The following pronouncements from Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854, 862, are patently applicable and correctly enunciate the law:

"* * * It is axiomatic that neither the legislature nor the people can delegate to an administrative board the power to legislate. Only the people and the legislature may perform this function.

"* * * Legislation may pass to administrative boards or officials the right or power to find facts or conditions properly prescribed under which the law as passed will or will not operate, but it may not permit the board to say what the law shall be. * * *"

The adoption of the regulation under consideration did not relate to any existing nuisances, sources of filth, or causes of sickness, but contains such matter dealing with subjects solely within the discretion of the state legislature, namely, those provisions dealing with milk, barns, vehicles, transportation, and the quality of milk, that is, its food values, etc.

We are not unmindful of the fact that the state dairy code is essentially a health measure, State v. DeWitt, 49 Ariz. 197, 65 P.2d 659, concerning a subject well within the police power of the state, and that its enforcement regulates or impinges on a business pursuit is a matter of secondary consideration. Its double-barreled features could readily have been the reason that actuated the legislature to invest its enforcement in a state dairy commissioner rather than in the State Board of Health. This so-called regulation has all the attributes and ingredients of law. It declares what the law on the subjects treated shall be in that it purports to regulate future conduct and fixes rights, duties, and obligations pertaining to a business pursuit. Its application and regulatory effect extends beyond the county boundaries and if permitted to stand would allow the county boards of health in our fourteen counties to set up fourteen principalities with conflicting, burdensome, and intolerable trade barriers in a field of state-wide concern that had theretofore received more than passing consideration as evidenced by the enactment of the state dairy code. Associated Dairy Products Co. v. Page, supra. Such shocking consequences are inconceivable when it is recalled that this purported law was enacted by a statutory board composed of the Chairman of the Board of Supervisors, the County Attorney, and a physician of the county, designated as the County Health Officer.

Having demonstrated and concluded that this so-called regulation is in fact a comprehensive health law in so far as it relates to the dairy industry, and being of the opinion that there is and can be no grant of legislative power to a county board of health to enact such a law, or any law at all, it is not necessary for us to consider the quantum of power granted, such as was the situation in Associated Dairy Product Co. v. Page, supra.

Since the Superior Court of Coconino County acted without jurisdiction in entertaining the prosecution and should have granted the motion to dismiss challenging its jurisdiction, and since petitioner had no other speedy or adequate remedy available than the writ of prohibition, and since all the equities existing require the court to exercise its discretion to issue the writ, the alternative writ of prohibition heretofore issued is made permanent.

UDALL, STANFORD, PHELPS, and DE CONCINI, JJ., concurring.