803 P.2d 897

**Reinhold MARSONER, dba Les Girls, Joseph Hilt, dba I–10 Adult Books, Betty Osco, dba Empress Theater, Daniel Osco, dba the Livingroom Lounge, Daniel Osco, dba Empress II, David Lindsey, dba the Party House, Raymond Mellenberndt, Jr., dba Pleasure World, Mark D. Holguin, dba the Bookstore Southwest, Leonard T. Sojka, dba ABC Stores, Speedway Entertainment, Inc., an Arizona Corporation, Albright**

Investment Corporation, an Arizona Corporation, Miracle Mile Movies, Inc., an Arizona Corporation, Wal Limited, Inc., an Arizona Corporation, and Adult Expectation, Inc., an Arizona Corporation, Plaintiffs/Appellees,

v.

PIMA COUNTY, a Body Politic, Defendant/Appellant.

No. CV–90–0144–PR.

Supreme Court of Arizona, En Banc.

Jan. 3, 1991.

Michael J. Bloom, P.C. by Michael J. Bloom, Tucson, for plaintiffs/appellees.

Stephen D. Neely, Pima County Atty., Martin Willett, Pima County Deputy County Atty., Tucson, for defendant/appellant.

## OPINION

GORDON, Chief Justice.

Pima County (the County) petitioned this court to review the court of appeals' decision that the County, acting through its Board of Supervisors, lacks authority under Arizona law to enact an ordinance requiring the licensing of adult amusement establishments. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### FACTUAL AND PROCEDURAL BACKGROUND

Between April and November 1987, the Disease Control Subcommittee of the Pima County Board of Health held several meetings to analyze and draft an ordinance regulating adult amusement establishments. In addition to the subcommittee meetings, the Board of Health conducted its regular monthly meetings as well as two public hearings that dealt solely with the proposed ordinance.

On November 25, 1987, the County Board of Health formally recommended that the Board of Supervisors adopt the ordinance and transmitted a draft of the ordinance to the Board of Supervisors. On January 12, 1988, the Board of Supervisors adopted the recommended ordinance, No. 1988–14. The ordinance's stated purpose was "to prevent transmission of human immunodeficiency virus (HIV) by requiring the operation of adult amusement establishments in a safe, sanitary, and educating manner." No. 1988–14, at 1.

The ordinance provides that adult amusement establishments, which include peep

shows, bathhouses, and other sexually-oriented establishments, must submit to, *inter alia*, the following regulatory measures: a permit requirement; not less than four unannounced inspections per year; authority in the health officer to enter at any time the business is open to determine compliance; a restriction of one person in a private viewing booth at any time; a prohibition against doors on the viewing booths; a requirement that surfaces in the booths be non-porous; a requirement of regular cleaning procedures to remove all garbage, trash, body fluids, and excrement from the booths; and criminal penalties, defined as a class 2 misdemeanor for violating the permit requirement and a class 3 misdemeanor for violating any other ordinance requirement.[1]

Marsoner and other adult amusement establishment owners (collectively Marsoner) filed suit to have the ordinance declared invalid. They later moved for summary judgment on the ground that the Board of Supervisors does not have authority to enact the ordinance. Upon a stipulated statement of facts, and cross-motions for summary judgment, the trial court concluded that the Board lacked authority to enact the ordinance. The court of appeals affirmed the trial court's findings, holding that the County, acting through its Board of Supervisors, does not have authority under Arizona law to enact an ordinance requiring the licensing of adult amusement establishments. *Marsoner v. Pima County*, —— Ariz. ——, 801 P.2d 430 (App.1990). We disagree.

## DISCUSSION

■ The county boards of health and health departments have the same authority as the State Department of Health Services (DHS), and either the State or Pima County Department of Health could have enacted the ordinance. Both parties acknowledge this authority exists and that it is supported by the holding in *State v. Kelsall*, where the court of appeals stated

"that any authority given by the legislature to the state board of health to regulate specific activity or to attain specific objectives is likewise possessed by local departments of health." 22 Ariz.App. 97, 100, 523 P.2d 1334, 1337 (1974) (citing *State v. Phelps*, 12 Ariz.App. 83, 467 P.2d 923 (1970)).

Statutory construction is ordinarily a question of law. *See Abbott v. City of Tempe*, 129 Ariz. 273, 275, 630 P.2d 569, 571 (App.1981). When interpreting a statute, effect must be given to the legislative intent. Unless the context of the statute and the entire act of which it is a part require otherwise, statutory language will be given its usual meaning. *State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). We will give words their plain meaning unless it is impossible to do so or absurd consequences will result. *In re Marriage of Gray*, 144 Ariz. 89, 91, 695 P.2d 1127, 1129 (1985).

■ Having established this coextensive power, we must now examine the statutes that specifically enumerate the powers held by the Director of DHS, the local boards of health, and the county boards of supervisors. We must determine whether the plain meaning of the words in these statutes expressly grants to the county, acting through its board of supervisors, the power to enact such an ordinance. Our courts have consistently required counties and county boards of supervisors to show an express grant of power whenever they assert that such statutory authority exists. They have only those powers that are expressly or by necessary implication delegated to them by the legislature. *Associated Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949); *Davis v. Hidden*, 124 Ariz. 546, 548, 606 P.2d 36, 38 (App.1979); *Maricopa County v. Black*, 19 Ariz.App. 239, 241, 506 P.2d 279, 281 (1973).

■ A.R.S. § 36–136, enumerating the powers of the Director of DHS, provides in subsection I:

"A person violating a published order or regulation of a board of health is guilty of a class 3 misdemeanor."

---

1. The County concedes that the penalty provisions of the ordinance incorrectly provide for a class 2 misdemeanor. Such authority exceeds that given in A.R.S. § 36–167(C), which states:

I. The rules adopted under the authority conferred by this section shall be observed throughout the state and shall be enforced by each local board of health, *but nothing herein shall be deemed to limit the right of any local board of health or county board of supervisors to adopt such ordinances and rules as authorized by law within its jurisdiction,* provided that such ordinances and rules do not conflict with the state law and are equal to or more restrictive than the provisions of the rules of the director. (Emphasis added.)

Section 36–184(B) specifically grants to the local boards of health the power to recommend rules and regulations to their county boards of supervisors for adoption and enforcement. It requires the boards to:

3. Make rules and regulations, not inconsistent with the rules and regulations of the department of health services, for the protection and preservation of public health.

\*     \*     \*     \*     \*     \*

5. Recommend rules and regulations to the respective *county boards of supervisors for adoption and enforcement* in their respective counties. (Emphasis added.)

The powers of the county boards of supervisors are enumerated in § 11–251. Subsection 17 authorizes them to "[a]dopt provisions necessary to preserve the health of the county, and provide for the expenses thereof." Marsoner concedes that limiting the spread of AIDS is a legitimate state interest and that the ordinance does involve a question of the county's health.

It is difficult to imagine a more express direction from the legislature to the county boards of supervisors that they may adopt rules and regulations to protect and preserve public health, including those rules and regulations recommended by the county boards of health. Section 36–184(B)(5) expressly grants to the boards of health the authority to recommend rules and regulations to the boards of supervisors to adopt and enforce. This authority is reinforced by the language in § 11–251(17) specifically authorizing the boards of supervisors to adopt provisions necessary to preserve the county's health. State law will not limit the boards of supervisors' right to adopt these ordinances as long as they do not conflict with state law and are equal to or more restrictive than the provisions of the director's rules. To hold that the county boards of supervisors have no such authority would fly directly in the face of the express wording of these statutes.

### CONCLUSION

We hold that A.R.S. §§ 36–184(B), 36–136, and 11–251 expressly give the County, acting through its Board of Supervisors, the authority under Arizona law to enact an ordinance requiring the licensing of adult amusement establishments. We vacate the court of appeals' opinion, reverse the trial court's findings, and uphold Pima County Ordinance No. 1988–14.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.