202 P.3d 466

Brian R. HOUNSHELL, the Sheriff in and for Apache County, Plaintiff/Petitioner/Appellee,

v.

Tom M. WHITE, Jr.; David A. Brown; and Jim Claw; all duly elected members of the Board of Supervisors of Apache County, a Body Politic and Corporate of the State of Arizona in their capacities as Supervisors, Defendants/Respondents/Appellants.

No. 1 CA–CV 06–0730.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 29, 2008.

Review Denied Jan. 6, 2009.

Law Office of David Alan Darby By David Alan Darby, Tucson, Attorney for Plaintiff/Petitioner/Appellee.

Buckley King, LPA By Roger W. Hall, Phoenix, Counsel for Defendants/Respondents/Appellants.

Burch & Cracchiolo, P.A. By Daniel M. Malinksi, Phoenix, Attorneys for Amicus Curiae Maricopa County, et al.

La Paz County Attorney's Office By Martin Brannan, La Paz County Attorney, Parker, Attorney for Amicus Curiae La Paz County Officers.

Yavapai County Attorney's Office By Sheila Sullivan Polk, Yavapai County Attorney, Jack H. Fields, Deputy Yavapai County Attorney, Prescott, Attorneys for Amicus Curiae Yavapai County Officers.

Pima County Attorney's Office By Barbara LaWall, Pima County Attorney, Regina L. Nassen, Deputy Pima County Attorney, Tucson, Attorneys for Amicus Curiae Pima County Officers.

Greenberg Traurig, LLP By Pamela M. Overton, Jennifer M. Dubay, Phoenix, Attorneys for Amicus Curiae Maricopa and La Paz County Officers.

## OPINION

BARKER, Judge.

¶1 Appellants Tom M. White, Jr., David A. Brown, and Jim Claw, in their official capacities as members of the Apache County Board of Supervisors (the "Board"), appeal from the trial court's determination that a county board of supervisors or its designated agent may not discipline the classified employees of other county officers. For the following reasons, we affirm.

### Facts and Procedural History

¶2 In early 2006, Apache County retained Jim Humphrey ("Humphrey") to conduct an administrative investigation concerning overtime issues in the Sheriff's Office. In connection with his investigation, Humphrey interviewed a number of employees in the Sheriff's Office, all of whom were instructed in writing not to discuss or divulge the issues raised or questions asked without first seeking permission from Humphrey to do so.

¶3 One of the employees interviewed by Humphrey was Travis Simshauser ("Simshauser"), a classified employee who holds the rank of Commander. During a regularly scheduled meeting of the Board on February 7, 2006, Apache County Sheriff Brian Hounshell ("Hounshell") indicated that Simshauser had spoken to him about his interview with Humphrey. Simshauser had not been granted permission to discuss his interview with anyone.

¶4 As a result of this disclosure, County Manager Delwin Wengert ("Wengert") initiated a separate administrative investigation into Simshauser's apparent breach of confidentiality and other matters. During an interview related to this investigation, at which he was accompanied by Hounshell, Simshauser refused to answer any questions. Wengert provided Simshauser an opportunity to reconsider his position, but he again refused to answer any questions. Wengert subsequently suspended Simshauser without pay for thirty days. Simshauser filed a grievance pursuant to the Apache County Human Resources Policy Manual (the "Manual").

¶5 Hounshell filed a special action complaint against Wengert and the Board, challenging Simshauser's suspension and seeking a declaration that only Hounshell had the authority to discipline classified employees in the Sheriff's Office. Wengert and the Board answered the complaint and moved to dismiss on the grounds that Simshauser was pursuing an "equally plain, speedy and adequate remedy" in accordance with the Manual and the issue before the court was not one of broad public significance. The motion to dismiss was denied.

¶6 The parties submitted cross-motions for summary judgment concerning the legal issues raised in the pleadings. The trial court considered the motions without oral argument. By minute entry order dated August 31, 2006, the trial court granted summary judgment in favor of Hounshell and against Wengert and the Board. The trial court concluded, in relevant part:

Under ARS 11–356 only the appointing authority may dismiss, suspend or reduce in rank a county employee in the classified civil service of a county. Here the Sheriff is the appointing authority.... See, *ARS 11–409*.

In order for a county manager to impose discipline, the county has to be given specific authority to act. *Marsoner v. Pima County*, 166 Ariz. 486 [803 P.2d 897] (1991). The Arizona Legislature has not empowered county managers to impose discipline unless the manager happens to be the appointing authority under ARS 11–356. The legal power to grant or withhold

consent and to set salaries does not give the County Board of Supervisors or its agent, the County Manager, the ability to act as an appointing authority for those County Officers enumerated in ARS 11–404[sic].

¶ 7 The trial court entered a signed judgment on October 11, 2006, and the Board timely filed a notice of appeal.[1] We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## Discussion

¶ 8 On appeal, the Board contends that the trial court erred by concluding that its agent, the County Manager, did not have the authority to discipline a Sheriff's deputy. "We review this matter de novo because it involves a matter of statutory interpretation." *Melgar v. Campo*, 215 Ariz. 605, 606, ¶ 6, 161 P.3d 1269, 1270 (App.2007); *see also Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005) ("Matters of statutory interpretation are questions of law, which we review de novo.").

### A. Relevant Statutory Provisions

#### 1. County Officers and the Power of Appointment

¶ 9 The "county officers" are identified in A.R.S. § 11–401(A) (2001), and include the sheriff, recorder, treasurer, school superintendent, county attorney, assessor, supervisors, clerk of the board of supervisors, and tax collector. The legislature has granted these county officers the following power of appointment:

> The county officers enumerated in § 11–401 may, by and with the consent of, and at salaries fixed by the board, appoint deputies, stenographers, clerks and assistants

necessary to conduct the affairs of their respective offices. The appointments shall be in writing, and filed in the office of the county recorder.

A.R.S. § 11–409 (2001).

#### 2. County Merit Systems

¶ 10 Independent of the foregoing, any county in Arizona may "adopt a limited county employee merit system as is adaptable to its size and type." 1969 Ariz. Sess. Laws, ch. 117, § 1; *see also* A.R.S. § 11–352(A) (2001) ("Any county may by resolution of the board adopt a limited county employee merit system for any and all county appointive officers and employees. Elected officers shall not be included in such merit system."). Generally speaking, merit systems are designed to ensure that the "hiring, retention, and dismissal of public employees [is] based on the employees' merit and competence, and not on political considerations." *Pima County v. Pima County Law Enforcement Merit Sys. Council*, 211 Ariz. 224, 227, ¶ 14, 119 P.3d 1027, 1030 (2005).

¶ 11 Within the merit system statutory scheme, employee disciplinary decisions are made by the "appointing authority" as follows:

> Any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation *by the appointing authority* after appointment or promotion is complete only by written order, stating specifically the reasons for the action....

A.R.S. § 11–356(A) (2001) (emphasis added). An employee who is dissatisfied with the decision of the appointing authority may appeal to the merit system commission, which has the authority to "affirm, modify or revoke the order." A.R.S. § 11–356(B)–(C).[2]

---

1. Wengert is not a party to this appeal.

2. There appears to be some dispute as to whether Apache County has actually adopted a limited county employee merit system. According to Hounshell, the County's Manual specifically provides that the policies set forth therein "are not intended to be a 'limited merit system' as defined by A.R.S. § 11–351 *et seq.*" The Board, on the other hand, argues that the County has adopted a "modified" employee merit system that meets the requirements of A.R.S. § 11–351 *et seq.* To the

extent there is a factual issue in this regard, we must view the facts and any inferences drawn from those facts in the light most favorable to the Board as the party against whom summary judgment was entered below. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). Thus, we assume without deciding, for purposes of this Opinion, that Apache County has adopted an employee merit system as contemplated by the legislature.

### B. Identifying the "Appointing Authority"

¶ 12 In this case, we are asked to determine whether the Board is an "appointing authority" such that it may discipline a Sheriff's deputy pursuant to A.R.S. § 11–356(A). In making this determination, we look first to the plain language of the applicable statutes as the most reliable indicator of their meaning. *See City of Phoenix v. Harnish*, 214 Ariz. 158, 161, ¶ 11, 150 P.3d 245, 248 (App. 2006).

¶ 13 Pursuant to A.R.S. § 11–409, each county officer has the power, with the consent of the Board, to "appoint deputies, stenographers, clerks and assistants necessary to conduct the affairs of their respective offices." We believe it is clear from the plain language of this statute that the county officer—in this case, the Sheriff—is the appointing authority with respect to his or her own deputies and employees.

¶ 14 The fact that the Board must consent to the appointment of a given employee does not make the Board a separate appointing authority. This situation is somewhat analogous to the President's power to appoint cabinet-level department heads, ambassadors, and justices of the United States Supreme Court. U.S. Const. art. II § 2. While the Constitution requires such appointments to be made "by and with the Advice and Consent of the Senate," it is clear that the President remains the sole "appointing authority." *Id.* The Senate's power to withhold consent determines whether the appointment will take effect.

¶ 15 Our conclusion in this regard is also consistent with our prior recognition, albeit in a different context, that the "appointing authority" vested with primary discretion over public employee disciplinary matters is "the county employee's immediate departmental or agency employer." *Pima County v. Pima County Merit Sys. Comm'n*, 186 Ariz. 379, 381, 923 P.2d 845, 847 (App.1996) (citing A.R.S. § 11–356(A)); *see also Maricopa County v. Gottsponer*, 150 Ariz. 367, 371, 723 P.2d 716, 720 (App.1986), *disapproved on other grounds by Maricopa County Sheriff's Office v. Maricopa County Employee Merit*

*Sys. Comm'n*, 211 Ariz. 219, 119 P.3d 1022 (2005) (same).

¶ 16 The Board contends that our supreme court's decision in *Mann v. Maricopa County*, 104 Ariz. 561, 456 P.2d 931 (1969), compels a different result in this case. In *Mann*, two court employees sought to continue to work past the age of 70 by requesting a special exception to a statute that prohibited employment past that age for county employees. *Id.* at 562, 456 P.2d at 932. After the board of supervisors denied their request without articulating any reason for its decision, the individuals appealed, successfully arguing that allowing the board to exercise control over the employees of a judge violated separation of powers because it gave an executive body (the board) too much control over the judiciary (the judges). *Id.* at 566, 456 P.2d at 936. Thus, *Mann* merely stands for the proposition that the judiciary must retain the power of control over personnel directly connected with the operation of the courts. *Id.; see also Winter v. Coor*, 144 Ariz. 56, 58, 695 P.2d 1094, 1096 (1985). The *Mann* decision does not address the authority of a county board of supervisors to discipline the classified employees of other county officers. Moreover, to the extent the *Mann* court analyzed A.R.S. §§ 11–401 and 11–409, it did so merely to illustrate the legislature's intent to exclude court personnel from the county employee merit system. *Mann*, 104 Ariz. at 565–66, 456 P.2d at 935–36. Nothing in *Mann* is inconsistent with this Opinion.

¶ 17 We also must reject the Board's argument that the legislature's enactment of the county merit system statutes and/or its amendment of A.R.S. § 11–409 nearly forty years ago evidenced an intent to make the county board of supervisors an appointing authority for the deputies or employees of other county officers. We acknowledge that the statute previously included a subsection B, which provided that "[d]eputies appointed by and with the advice and consent of the board of supervisors may be removed by the board or by the officer appointing them." *Mann*, 104 Ariz. at 566, 456 P.2d at 936. However, even that provision clearly distinguished "the board" from "the officer appointing" the deputies in question. More-

over, to the extent a board of supervisors arguably could have been considered an appointing authority under that provision, its removal from the statute in 1969 eliminated any such possibility. *See* 1969 Ariz. Sess. Laws, ch. 117, § 3.

¶ 18 In view of the foregoing, we conclude that the Sheriff is the sole appointing authority with respect to his or her deputies and other classified employees pursuant to A.R.S. § 11–409. Moreover, we find that A.R.S. § 11–356(A)—which permits only the "appointing authority" to dismiss, suspend, or reduce in rank—by its plain terms does not confer such authority upon the Board or its agent, the County Manager.

### C. *Powers of Board of Supervisors*

¶ 19 Apart from A.R.S. §§ 11–356(A) and 11–409, the Board has not asserted that any other statute confers on a county board of supervisors the power to discipline the classified employees of other county officers.[3] The absence of any such authority is critical because "[t]he only powers possessed by boards of supervisors are those expressly conferred by statute or necessarily implied therefrom." *Bd. of Supervisors of Apache County v. Udall*, 38 Ariz. 497, 506, 1 P.2d 343, 347 (1931); *see also Marsoner v. Pima County*, 166 Ariz. 486, 488, 803 P.2d 897, 899 (1991) ("Our courts have consistently required counties and county boards of supervisors to show an express grant of power whenever they assert that such statutory authority exists.").[4]

¶ 20 We decline to find, as the Board urges, that the legislature "necessarily implied that a board of supervisors . . . had the authority to . . . discipline 'any and all appointive officers and employees'" when it enacted the county merit system statutes. "[T]he only function of an implied power is to aid in carrying into effect a power expressly granted." *Associated Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949). Thus, implied powers do not exist independently of the grant of express powers. *Id.* Because our legislature has not expressly granted a county board of supervisors the power to discipline the classified employees of other county officers, we may not—and do not—find such authority by implication.

¶ 21 We also note that the legislature has, in some limited circumstances, specifically granted the county boards of supervisors the authority to supervise and/or discipline county officers. For example, a board of supervisors may

[s]upervise the official conduct of all county officers and officers of all districts and other subdivisions of the county charged with assessing, collecting, safekeeping, managing or disbursing the public revenues, see that such officers faithfully perform their duties and direct prosecutions for delinquencies, and, when necessary, require the officers to renew their official bonds, make reports and present their books and accounts for inspection.

A.R.S. § 11–251(1). Likewise, a board of supervisors may "[e]xamine and exhibit the accounts of all officers having the care, management, collection or disbursement of money belonging to the county or appropriated by law or otherwise for the use and benefit of the county." A.R.S. § 11–251(10). A Board of supervisors has the authority to "suspend the county assessor or county treasurer for defalcation or neglect of duty." A.R.S. § 11–664(A) (2001). The legislature has also provided that a county board of supervisors may require a county officer to post a bond and that "an officer who neglects or refuses . . . to give the bond within ten days after being so required, may be removed from office by the board . . . ." A.R.S. § 11–253(A).[5]

---

3. While the powers of a county board of supervisors are set forth generally in A.R.S. § 11–251 (Supp. 2006), the Board does not contend that any of the powers enumerated therein grant it the authority to make disciplinary decisions affecting the deputies or employees of other county officers.

4. Thus, even assuming, as the Board appears to suggest, that Hounshell failed to object to the County Manager's imposition of discipline in previous cases, the Board's authority may not be derived from a purported "waiver" in the absence of any statutory grant of authority.

5. In addition, the legislature has affirmatively granted the boards of supervisors the power of

¶ 22 The foregoing statutes demonstrate that the Arizona legislature knows how to expressly grant a board of supervisors the power to supervise and impose discipline when it wishes to do so. It has not done so with respect to deputies and employees of other county officers, and we can only conclude that its choice in this regard was intentional. *See Reinke v. Alliance Towing*, 207 Ariz. 542, 545, ¶ 19, 88 P.3d 1154, 1157 (App. 2004) (" 'Where the legislature has included a specific provision in one part of a statute and omitted it in another part, we must conclude that it knows how to say what it means, and its failure to do so is intentional.' ") (quoting *Paragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., Inc.*, 859 So.2d 1233, 1235 (Fla.Dist.Ct.App.2003)); *Padilla v. Indus. Comm'n*, 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976) (explaining that fundamental to statutory interpretation "is the presumption that what the Legislature means, it will say.").

### D. Checks and Balances

¶ 23 Finally, the Board and various *amici* caution that the result we reach here may (1) permit a county officer to choose not to discipline a "rogue" employee on the basis of favoritism or collusion; (2) create nine separate "fiefdoms" in each of the counties; and/or (3) subject the county to *respondeat superior* liability where a county officer declines to address employee misconduct.

¶ 24 With respect to the Board's first concern, we acknowledge the risk that county officers may, in some circumstances, abuse their power. However, the Board itself is comprised of elected officers who are no less immune from such abuses. *See* A.R.S. § 11-401(7). Moreover, while a county officer may not be accountable to the Board itself, he or she is accountable to the voting public.[6] Thus, a county officer choosing to overlook egregious employee misconduct may not be

reelected, may be subject to a recall election, or may be impeached to the extent the officer's inaction amounts to "wilful or corrupt misconduct in office." A.R.S. § 38-341(A) (2001). Additionally, such elected officers are still subject to the criminal justice system. Elected officials who violate criminal statutes or who direct their employees to do so may be prosecuted and removed from office. A.R.S. § 38-343(c).

¶ 25 Second, while we acknowledge the potential for inconsistent disciplinary decisions—i.e., that different county officers might impose different discipline under similar circumstances—we do not agree with the Board that each of the nine county officers would "need to create his or her own set of employee disciplinary rules" or that "[o]nly those county employees not employed by one of the elected county officers would be covered by a county's merit system." We hold that the elected county officers are the sole appointing authority for their respective employees within such a system.

¶ 26 Finally, we recognize that a complaining party can argue that a county may incur liability in the event that a county officer declines to discipline an employee engaged in misconduct. *See Estate of Abdollahi v. County of Sacramento*, 405 F.Supp.2d 1194, 1200-01, 1206-07 (E.D.Cal.2005) (explaining that failure to discipline county jail employee supported imposition of county liability); *Ware v. Jackson County, Mo.*, 150 F.3d 873, 883 (8th Cir.1998) (explaining that failure to discipline county jail employees for misconduct supported finding of county liability). While we appreciate the Board's desire to take action of its own in such circumstances, the county merit system statutory scheme simply does not permit it to do so. Absent such a legislative grant of authority, however, we cannot judicially create such a power.

---

appointment with respect to certain specific offices. *See, e.g.,* A.R.S. § 11-241 (2001) (clerk of the board); A.R.S. § 11-353 (2001) (merit system commission members); A.R.S. § 11-561(A) (2001) (county engineer); A.R.S. § 11-581 (2001) (public defender); A.R.S. § 11-592(A) (2001) (county medical examiner); A.R.S. § 11-1005(A)(1) (Supp.2006) (animal control enforce-

ment agent); and A.R.S. § 11-1006(A) (2001) (hearing officers).

6. For example, the Arizona Constitution provides that the Sheriff "shall be elected and hold his office for a term of four (4) years beginning on the first of January next after his election." Ariz. Const. art. 12, § 3.

### Conclusion

¶ 27 For the foregoing reasons, we affirm the trial court's summary judgment in favor of Hounshell.

CONCURRING: ANN A. SCOTT TIMMER and PATRICIA A. OROZCO, Judges.