[Civil No. 1776.   Filed November 13, 1919.]

[185 Pac. 133.]

T. BONE, Appellant, v. W. K. BOWEN, C. W. PETERSON and J. R. BRADSHAW, as Members of and Constituting the Board of Supervisors of Maricopa County, State of Arizona, and E. HACKETT, A. F. JONES, P. T. HURLEY, J. G. PETERSON and C. C. GREEN, as Members of and Constituting the Highway Commission for Maricopa County, State of Arizona, Appellees.

1. HIGHWAYS—SUPERVISORS HAVE NO RIGHT TO CONTRACT TO FURNISH CRUSHED ROCK.—In proceeding under Laws of 1917, chapter 31, and acts amendatory thereof for construction and improvement of several miles of highway in county, the board of supervisors have no authority pursuant to agreement with highway commission to bid or contract for the crushing and furnishing of rock needed, or to purchase a rock-crushing plant to be used for that purpose, Civil Code of 1913, paragraph 2446, providing that no member of the board shall be interested in any contract made on behalf of the county, said chapter 31 forbidding doing of work by force account, and Constitution, article 9, section 3, forbidding use of public money for other than specific purposes.

2. COUNTIES — INDIVIDUAL LIABILITY OF COUNTY OFFICERS ON CONTRACTS OF COUNTY.—The county is a body corporate and must exercise its powers through its officers and agents, and contracts made by officers or agents on behalf of the county in pursuance of some law authorizing it are the contracts of the county, and not the contracts of the individual officer or agent.

3. HIGHWAYS—POWER OF BOARD OF SUPERVISORS TO CONTROL HIGHWAYS.—The general provisions conferring upon the board of supervisors the power to control and manage public roads, etc. (Civ. Code 1913, pars. 2418, 5058), do not authorize the board to participate in the construction or improvement of highways undertaken by the county under Laws of 1917, chapter 31, since the latter is a special statute, in which a particular body, the highway commission, is empowered to supervise and control the work therein contemplated.

4. COUNTIES — POWERS OF BOARD OF SUPERVISORS, THOSE GIVEN BY STATUTE.—The only powers possessed by the board of supervisors are those expressly conferred by statute, or necessarily implied therefrom.

5. CONSTITUTIONAL LAW — CONSTITUTIONAL PROVISION IS NOT SELF-EXECUTING.—Constitution, article 2, section 34, giving to the state

and each municipal corporation therein the right to engage in industrial pursuits is not self-executing.

6. CONSTITUTIONAL LAW — STATUTE CANNOT BE CHANGED BY THE COURTS.—If a law needs to be changed in the interests of economy or efficiency, the body to do that is the legislature, and not the courts.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed, with directions.

Mr. Richard E. Sloan, for Appellant.

Mr. L. M. Laney, County Attorney, for Appellees.

ROSS, J.—This is a companion case to *Bone* v. *Highway Commission* (just decided), *ante*, p. 587, 185 Pac. 131, and has for its object the restraining of the board of supervisors of Maricopa county and the highway commission of Maricopa county from entering into a plan or scheme they have formulated, whereby the commission proposes to advance to the board the sum of $40,000, to be used by the board to purchase a rock-crushing plant to manufacture rock to be by them turned over to the highway commission at cost, and to be used by the commission in its program of highway construction. More in detail, it appears from the pleadings that the commission has in its possession $4,000,000 which it is authorized to spend in road construction in Maricopa county. This large sum was voted by the electors and taxpayers of the county upon the proposal submitted to them that it would be sufficient to construct and improve some 278 miles of highway described in the proposal. The effort is to make the money do the work. The scheme evolved by the commission is one thought to be in the interest of economy, and was devised solely for the purpose of securing the most possible road construction with the funds voted for road building. This is apparent from the pleadings upon which the question is submitted, as also from the arguments and briefs of counsel. It is stated that the crushed rock entering into the program of road construction alone will cost $500,000. The plan or scheme as stated by counsel for the highway commission is as follows:

"In its advertisement for bids the commission states that it will pay the contractor for the crushed rock furnished by

him in the following manner: That is to say, by paying $40,000 at the time of entering into the contract, and then the balance after $40,000 worth of said crushed rock shall have been delivered to and accepted by the commission, cash on delivery. The highway commission and the board of supervisors of Maricopa county have a mutual understanding and agreement to the effect that said board of supervisors will put in a bid in response to said advertisement to furnish said crushed rock to the highway commission, said board of supervisors to name a sum certain per unit of measurement as its bid, but to make said bids so low as to pay only for the cost of production. It is admitted by both parties to the above-entitled cause that the board of supervisors, owing to the fact that it will not seek to make a profit, will be the lowest responsible bidder. In the event that the board of supervisors is the lowest responsible bidder for furnishing this crushed rock, then upon the contract being entered into and satisfactory security being given by said board, the highway commission will pay the said board the sum of $40,000, as a part payment of the purchase price of the crushed rock to be furnished under the contract. This sum the board of supervisors will use in purchasing and installing proper rock-crushing machinery to enable the said board to fulfill its contract."

It is the contention of appellant that the board of supervisors has no power or authority in law to bid or contract for the crushing and furnishing of the rock needed, or to purchase a rock-crushing plant to be used for that purpose. Looking into the provisions of chapter 31, Laws of 1917, and acts amendatory thereof, under which bonds for road building were issued and the highway commission was created and is acting, we find the powers and duties of the board of supervisors therein enumerated. They are given the power and duty: (1) To order and supervise the bond election; (2) to appoint the members of the highway commission and fill vacancies in the commission, and fix amount of commissioners' bond and approve it, and to remove a commissioner for just cause; (3) to publish at least two weeks before the bond election "without alteration or modification" the highway commission's report of its investigation and recommendation of highways to be improved, and to include in the call for election only such highways; (4) to pay the actual

and necessary expenses incurred by the board in holding bond elections, etc., out of the general fund of the county until the road bonds are sold, when the general funds of the county shall be reimbursed; (5) to sell bonds issued to improve highways and deposit proceeds with the county treasurer in a special fund designated "highway improvement fund"; and (6) after the public highways have been improved, as in chapter 31 provided, to keep them in repair, paying therefor out of the general fund of the county.

The act contains a positive·prohibition against any supervisor being appointed a member of the highway commission; and there are many prohibitions by implication against their participation either in the location or construction of the highways. For instance, they are forbidden the power to alter or modify the program of improvement proposed by the highway commission; the money derived from bond sale can be paid out only upon the order of the highway commission; any money expended by the board out of the county general fund in the organization program of improvement must be repaid to the county out of the highway improvement fund, and the only direct grant of jurisdiction over the public highways to the board is *after* the improvement is made.

Moreover, it is provided that "All work for which said bonds are issued shall be done under the supervision and direction of the highway commission."

The work of construction must be let by contracts after advertising and upon competitive bids in all cases except where the work costs $1,000 or less, when it may be done by the commission on force account.

The county is a body corporate, and, like other corporations, must exercise its powers through its officers and agents. Contracts made by an officer or agent of the county, on its behalf, in pursuance to some law authorizing it, are contracts of the county. The obligation of the contract in such case is the county's and not the officer's or. agent's. *Gannon* v. *Hohusen,* 14 Ariz. 523, 132 Pac. 566.

The legislature, in chapter 31, *supra,* as we have seen, thought it practicable and wise, in the plan of road building therein provided for, to designate two agencies and to give to them separate and distinct powers to be exercised, not ·in their behalf, but for the benefit of the county and its

representatives. The agent therein designated to locate highways and to spend the money in their construction is the highway commission. If the highway commission enters into a contract by which it agrees to pay for a certain work or material needed in highway construction, the contract is the county's, and must be discharged and satisfied with the county's moneys. Now, if the contractor be the board of supervisors in their representative capacity, the agreement to do the work or furnish the material is the county's obligation, and not the supervisors', and we then have the paradoxical situation of the county contracting with itself. Under the definition of a contract, there must be at least two parties; the one offering, and the other accepting. This condition, inherent in every contract, is not met when the county through its agent, the highway commission, agrees with the county through its agent, the board of supervisors, to do or to refrain from doing a certain thing. Failing in necessary parties, the contract likewise fails in consideration and mutuality. If, as proposed in the scheme, the highway commission advances to the board of supervisors $40,000 out of the highway improvement fund with which to purchase the rock-crushing plant, it would simply amount to taking the money out of one pocket and putting it into another pocket. It would still be the county's money. A bond for its faithful use, given to the highway commission by the supervisors, would be a bond from the county to the county. The plan or scheme proposed, reduced to its final analysis, amounts to this: The highway commission would advance to the members of the board of supervisors funds to purchase a rock-crushing plant, which the latter agree to pay back with crushed rock at cost, and to crush all other rock needed and furnish it to the county at actual cost. If it be the contract of the members composing the board, and not the contract of the commission, it will violate paragraph 2446, Civil Code, wherein it is provided that no member of the board shall be interested, directly or indirectly, in any contract made by the board or other person on behalf of the county for "the opening or improvement of roads"; and if it be the contract of the county, it will result in doing a large part of the construction work by force account, a violation not only of the spirit but the letter of chapter 31. As a matter of law, such an arrangement could not, for the reasons suggested, cul-

minate into any kind of contract binding and enforceable, either against the commission or the individual members of the board. It would simply be a mutual understanding and agreement between the highway commission and the members of the board of supervisors, without sanction of law, whereby the latter would volunteer their services free of charge to the commission in looking after and managing certain parts of the work, and the commission accepting the tendered services, would agree to purchase and turn over to the members of the board a rock-crushing plant and to pay all costs of producing the crushed rock needed, which is estimated to cost $500,000, or one-fourth of the entire bond issue. If this arrangement can be made as to the crushed rock, we perceive no reason why the members of the board cannot be employed to furnish the sand and cement as also to grade and lay the roadbed and thus consume by force account the whole fund of $4,000,000. The board's proposition to do the work and furnish the material at actual cost admittedly will prevent others from bidding, as no one except the county would want to, or could afford to, build county roads at actual cost.

The law provides that contracts to do the work or any part thereof, must be awarded to the lowest responsible bidder. This is repugnant to the idea that the work may be done by force account, and it cannot be defeated or nullified by the county formally asking for bids, knowing all the time it will award itself the contract, having previously made all arrangements to do so through its board of supervisors.

The general provisions of the law conferring upon the board of supervisors the power to "lay out, maintain, control and manage public roads . . . and levy taxes therefor" (subdivision 4, pars. 2418, 5058, Civil Code), cannot be appealed to as authorizing the board to participate in the construction or improvement of highways undertaken by the county under the provisions of chapter 31, for the reason the latter is a special statute in which a particular named body of men are empowered to supervise and control the work therein contemplated.

The county speaks and acts through its officers and agents, and before their utterances can have binding effect they must find warrant in the law. As was said in *Santa Cruz County* v. *Barnes,* 9 Ariz. 42, 76 Pac. 621:

"The only powers possessed by the board of supervisors are those expressly conferred by statute or necessarily implied therefrom." *Kenney* v. *Bank of Miami*, 19 Ariz. 338, 170 Pac. 866; *Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837.

More broadly stated:

"It is well settled that a county board possesses and can exercise such powers, and such powers only, as are expressly conferred on it by the Constitution and the statutes of the state, or such powers as arise by necessary implication from those expressly granted, or such as are requisite to the performance of the duties which are imposed on it by law." 15 C. J. 457; § 103.

We can find no provision in our laws, nor have counsel referred us to any, that expressly or by implication gives the county, through its board of supervisors, or any other agency, the power to engage in the manufacture of crushed rock for sale to itself or to its agents, the highway commission.

Counsel for appellees in his brief intimates that the proposed plan or scheme possibly finds warrant or sanction, in that provision of the state Constitution which gives to the state and each municipal corporation therein the right to engage in industrial pursuits. Section 34, art. 2. Whether this provision covers counties or not we do not think it necessary to decide. It is not self-executing. Before the state or one of its municipal corporations could undertake to carry on or engage in an industrial pursuit, legislation would have to be provided therefor. Otherwise it would have no funds to be used in such enterprise, nor rules nor regulations to guide it. It could not buy equipment nor pay for labor. Public money can only be raised and used for specific purposes, and those purposes must be pointed out by law. Section 3, art. 9, Constitution.

If the board of supervisors, as the agents of the county, can lawfully enter into the proposed contract, they must do so on the same footing as any other contractor. They must be real and not simulated contractors. They must show wherein the law has endowed them with the powers to enter the fields of industry in competition with private capital, the rule being that a county has no right to do any act or to engage in any business unless expressly authorized by statute. 15 C. J. 419, § 51; *Breathitt County* v. *Hammonds*, 150 Ky.

502, Ann. Cas. 1914D, 514, 42 L. R. A. (N. S.) 836, 150 S. W. 661.

It may be that the county will suffer great financial loss because the highway commission and the board cannot carry out the plan evolved, after much thought and investigation, by men confessedly actuated by the highest and best motives, and for the sole good of the county. However that may be, we must all yield to the law as drawn and enacted by the legislature. If the law needs to be changed in the interest of economy or efficiency, the body to do that is the legislature and not the courts. The fact that the scheme for road construction submitted by the agents of the county is or may be a money-saver to the county and a better scheme than the one provided for by the legislature will not justify its adoption by such agents, and much less can the court—whose duty it is to construe the laws and not to make them—by its solemn judgment, sanction such a course.

For the reasons given, we feel constrained to reverse the judgment, with directions that the demurrer be overruled and the prayer of the complainant be granted.

CUNNINGHAM, C. J., and BAKER, J., concur.