[Civil No. 3240. Filed March 1, 1933.]

[19 Pac. (2d) 328.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, GUARDIAN INSURANCE AGENCY, INCORPORATED, a Corporation, PHIL C. ENSIGN, BUD AUSTIN and H. C. GILBERT, Appellants, v. R. T. WAINSCOTT, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellants Hartford Accident & Indemnity Company and Guardian Insurance Agency, Incorporated.

Mr. L. M. Laney, for Appellant A. G. Austin.

Mr. Frank H. Lyman, for Appellant H. C. Gilbert.

Mr Henry J. Sullivan, for Appellant Phil C. Ensign.

Mr. L. C. McNabb and Mr. O. B. DeCamp, for Appellee.

LOCKWOOD, J. — R. T. Wainscott, hereinafter called plaintiff, brought suit against Hartford Accident & Indemnity Company, a corporation, Guardian Insurance Agency, Incorporated, a corporation, Phil C. Ensign, Bud Austin and H. C. Gilbert, hereinafter called defendants, under the provisions of sections 790 and 791, Revised Code of 1928, to recover from them certain sums of money paid by the individual defendants, who were at the time of payment the members of the board of supervisors of Maricopa county, out of the county treasury to the other defendants for premiums on policies of insurance covering the county's entire fleet of motor vehicles and protecting the county against any loss by fire or theft or liability for damage to property or persons.

There are four causes of action set up in the complaint, covering premiums paid at different times. Defendants demurred on the ground that the statute of limitations had run and that the complaint did not state a cause of action. There was also a general denial, and the statute of limitations was pleaded in bar. The court overruled the demurrers, but finally sustained the plea of statute of limitations as to the first, second and third causes of action, and rendered judgment in favor of plaintiff on the fourth cause, and, after the usual motion for new trial had been overruled, this appeal was taken.

There are six formal assignments of error, but we will consider them in accordance with the legal propositions raised thereby. The suit was brought under sections 790 and 791, Revised Codes 1928, which provide that, "whenever a board of supervisors shall, without authority of law, order any money paid out of the county treasury for any purpose, . . . " any taxpayer may under certain circumstances bring suit to recover such amount from the supervisors and the parties to whom the money was paid, together with certain statutory penalties.

Most of the facts necessary to a determination of the case are not in dispute, and we state them as follows, leaving any controverted issues to be taken up as necessary: Maricopa county is the owner of a large number of motor vehicles which were used by the county for various purposes. The board of supervisors, believing it to be in the interest of the county to do so, insured these vehicles with the defendant corporations against fire and theft and also against "public liability and property damage." These last elements are for injuries caused by negligence in the use of the motor vehicles, and the liability of the insurer is stated in the policy as follows:

"Section I — Public Liability. To pay within the limits specified in the declarations, any loss by liability imposed by law upon the assured for such bodily injuries or death (excluding loss by liability accepted by the assured, in contract or otherwise, or under any Workmen's Compensation Law, or loss by injury to or death of any employee of the assured while engaged in the maintenance or use of any automobile);

"Section II — Property Damage. To pay within the limit specified in the declarations, any loss by liability imposed by law upon the assured for such property damage (excluding property of the assured or in his custody, or property carried in or upon any of the described automobiles), including loss of use of such property; . . .

"A. Where it is stated in the declarations that the use of any automobile therein described is for 'Pleasure and Business' or 'Commercial' purposes, as these terms are defined on the reverse of the declarations, but not otherwise, this policy shall automatically be extended to cover as additional assured, any person or persons while riding in or legally operating any such automobile, and any person, firm or corporation legally responsible for the operation thereof (excepting always, a public garage, automobile repair shop and/or sales agency and/or service station, and the proprietors, agents, or employees thereof), *provided* such use or operation is with the permission of the named assured or, if the named assured is an individual, with the permission of an adult member of the assured's household, other than a chauffeur or domestic servant, and *provided further* that the insurance under this policy shall be available first to the named assured, and the remainder, if any, to other persons entitled to benefits hereunder. . . . "

It is contended by plaintiff that payment out of the county treasury for insurance of this kind was void, for two reasons: First, that the assured named in the policy is not "Maricopa County," the corporate name of the county by which under section 760, Revised Code 1928, it must be designated, but "Maricopa County Board of Supervisors," and, second, that even though Maricopa county was the assured in the policy, there was no authority of law for such county, acting through its board of supervisors or otherwise, to spend any money for insurance of the kind covered by the policy. We think the first contention of plaintiff is somewhat hypertechnical. Even though it be true that the policy should have named the assured as "Maricopa County," yet it was well known by all of the parties that the motor vehicles covered by the policy were owned by Maricopa county, and that the purpose of the policy was to insure the county against any lia-

bility imposed by law upon it, and the insuring corporation collected the premium with full knowledge of that fact. Under these circumstances, if any liability on the part of Maricopa county arose for any of the acts covered by the policies, the insurers would certainly be estopped from contending that the mistake in the legal name of the assured affected their liability. *Lenning* v. *Retail Merchants' Mutual Fire Ins. Co.,* 129 Minn. 66, 151 N. W. 425; Couch, Cyc. Ins., vol. 1, par. 221.

The second and, indeed, the vital question in the case is whether or not there was any authority of law whatever for the payment of money out of the treasury of Maricopa county for public liability or property damage insurance as defined in the policy on motor vehicles owned by the county. It is contended by plaintiff, and, indeed, admitted by defendant, that neither the state nor any political subdivision thereof, which last term obviously includes counties, is liable for the negligence of its agents when such agents are engaged in a governmental function. *State* v. *Sharp,* 21 Ariz. 424, 189 Pac. 631; *Larsen* v. *Yuma County,* 26 Ariz. 367, 225 Pac. 1115; *Jones* v. *City of Phoenix,* 29 Ariz. 181, 239 Pac. 1030.

It is, however, claimed by defendants, and not denied as an abstract proposition by plaintiff, that, if a political subdivision of the state is lawfully acting, not in a governmental capacity, but as a private corporation in private business, it is liable for the negligence of its servants. *City of Prescott* v. *Sumid,* 30 Ariz. 347, 247 Pac. 122; *Jones* v. *City of Phoenix, supra.*

Plaintiff, however, urges that under the law of Arizona, Maricopa county could not legally have engaged in or used its motor vehicles in anything but a governmental function, and that, if they were used otherwise, it was done without authority of law, and the members of the board of supervisors individually and

not the county would have been responsible for any liability arising out of such use.

In determining this question, we consider first the nature of a county. This court in the case of *Haupt* v. *Maricopa County*, 8 Ariz. 102, 68 Pac. 525, said:

" . . . A county is the local subdivision of a state or territory. It is created by the state for the purposes of government. Its functions, political and administrative, have direct relation to the policy of the state. It is possessed of only such powers as the state chooses to give it. It can incur no liability except in pursuance of law. It cannot be made to respond for wrongs committed by its officers or agents unless the statute so declares. . . . "

And again, in *Hunt* v. *Mohave County*, 18 Ariz. 480, 162 Pac. 600.

" . . . The counties are political subdivisions of the state created to aid in the administration of the state's laws and for the purpose of local self-government."

Most of the adjudicated cases distinguish between the powers and liabilities of counties and ordinary municipal corporations such as towns or cities. The reason generally given for the distinction is that towns and cities are voluntary corporations organized at the request and by the approval of the inhabitants thereof for special and local purposes, which purposes are independent of the general governmental activities of the state, and inure to their benefit as distinguished from that of the state, while counties are created by the legislature regardless of the wishes of the inhabitants for the purpose of exercising a certain portion of the general powers of the government in a specified locality. *Board of Commrs.* v. *Allman*, 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58.

As a corollary to this rule, the great weight of authority is in line with *Haupt* v. *Maricopa County*, *supra*, that counties have no powers to engage in any

activities of any nature unless there is a statute so authorizing them expressly or by strong implication, and that they are only liable for the acts of their agents when liability is expressly imposed by statute or follows as a matter of law from the exercise of powers clearly conferred on the county. Indeed, defendants do not deny this general proposition, but contend that under our Constitution counties as well as municipalities are authorized to engage in private business and industrial pursuits of every nature. Article 13, § 5, Constitution of Arizona. This right was urged in *Bone* v. *Bowen,* 20 Ariz. 592, 185 Pac. 133. While we did not therein expressly determine the question of whether a county is a "municipal corporation" within the scope of the constitutional provision above cited, nor do we think it necessary to determine that question at the present time, in the case just cited we held that this provision was not self-executing, and that under any circumstances legislation would have to be provided to authorize a municipal corporation to act thereunder.

It is true that the legislature has attempted by sections 762 and 765, Revised Code 1928, to authorize counties to engage in a certain class of industrial pursuits. We are of the opinion, however, that, in view of the general rule limiting the powers of counties to governmental functions, when a question arises as to whether a county has the right to engage in a function not governmental in its nature, the party claiming such right exists must show it affirmatively as a matter of both law and fact. There is nothing in the record showing that Maricopa county has ever done the things necessary to bring it within the terms of those sections, even if they are constitutional.

The only things which it is even suggested by defendants that the county had been doing in a private capacity were as stated in their brief, "the sale of

materials to private persons for a compensation; the delivery of materials to private built roads; the assisting of private persons constructing private enterprises,'' and ''delivering gravel and road material to private persons for which the county received pay.'' If these are private and not governmental activities, it must appear that Maricopa county was authorized by law to engage therein, or the activities were *ultra vires,* and not the county but the officers who authorized them in their individual capacities are liable for any torts arising therein. Is there any law which would authorize the county to do these things? Our attention has been called to the following provisions of the Code of 1928 as justifying such activities.

Section 774: ''The board of supervisors, under such limitations and restrictions as are prescribed by law, may: . . . 4. Lay out, maintain, control and manage public roads, ferries and bridges within the county and levy such tax therefor as authorized by law.''

''20. Make and enforce such rules and regulations for the government of their body, the preservation of order and the transaction of business as necessary.''

''22. Do and perform all other acts and things necessary to the full discharge of the duties as the legislative authority of the county government. . . . ''

The power given in subdivision 4, *supra,* in regard to public roads, etc., is almost universally held to be a governmental function. *Larsen* v. *Yuma County, supra.* That set forth in subdivision 20, *supra,* obviously refers merely to the method of conducting the internal affairs of the board itself and not to outside activities, while subdivision 22, *supra,* plainly implies only that they may do such things as are necessary to carry out the legislative duties authorized or directed by law. We think there is nothing contained in any of these subdivisions which authorizes the county to engage in private activities of any nature.

Apparently, however, the chief reliance of defendants is placed upon the provision of section 761 of the Code which states the powers of a county, and says:

"It has the power . . . to make such contracts and purchase and hold such personal property as may be necessary to the exercise of its powers; to make such orders for the disposition or use of its property as the interests of its inhabitants require. . . . "

It is argued from this, in substance, that, because the interests of the individual inhabitants of the county may be adversely affected in case they sustain personal or property damage through the agency of motor vehicles owned by the county, and the county itself cannot be compelled to pay therefor, that it may enter into a contract to insure such inhabitants against such damage with a private insurance carrier. If we are to give this construction to the provision of the statute just quoted, it would be equally within the power of the county to use its motor vehicles in running a bus line or truck line for hire, to use county buildings to conduct a mercantile business therein, or to exercise any of the other functions of a private corporation with its property, because in the opinion of the supervisors the interests of the inhabitants of the county required it. If it were the intention of the legislature to give counties the unlimited right to engage in every nature of private business for which their property might be used, we think that intention would have been made manifest in language very different from that in question. We are of the opinion it was rather meant to give discretion in the manner of use of the property of the county so long as that use was within the specific powers otherwise granted.

But, say defendants, even though the county would under no circumstances be liable itself for the use of the motor vehicles in question, and therefore not au-

thorized to purchase insurance which protected only it against a liability which did not exist, the provisions of the policies in question also protect its employees against liability for torts committed by them while using county property. So far as actual injury to the employees of the county themselves is concerned, they are protected fully by the Workmen's Compensation Law (Rev. Code 1928, § 1391 et seq.). We think it is going too far to say that the county is authorized to insure any of its employees against liability to others for their own wrongful conduct.

The last question which we need to consider is the contention that plaintiff has not shown his right to recover, even though a cause of action did exist against defendants. This apparently is based on the theory that somewhere there was "authority of law in the supervisors to spend the money in question." Defendants have not called our attention to any authority of law which they claim justifies the expenditure except those which we have already discussed, nor does it occur to us that there is any. Certainly it would seem that, since counties have only the powers expressly conferred upon them by statute, and their officers can only spend county money legally when the statute authorizes it, if money is spent for a purpose which is not authorized by the statute, it is spent illegally.

There is no doubt that under our law the responsibility placed upon boards of supervisors of counties is extremely onerous. Neither good faith on their part nor legal advice by the officers designated by law as their advisors will protect them against liability under sections 790 and 791, *supra,* if it be finally determined that the expenditure involved was not authorized by law. *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720; *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702; *Webster* v. *Parks,* 17 Ariz. 383, 153 Pac. 455.

450

Whether or not this burden is unjust is not a matter for judicial determination. It is a question for the legislative authority alone, and any appeal for relief must be made to that authority and not to the courts. We are satisfied that in this case all of the defendants acted in good faith and under legal advice, but as we have stated, that is no defense to the action. We are compelled to hold that the judgment of the superior court of Maricopa county was correct, and it is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.