420 P.2d 923

Ella L. ROBINSON, Appellant,

v.

C. F. LINTZ, Superintendent, Division of Building Inspections, City of Phoenix, Samuel Mardian, Jr., Mayor, Dr. Preston T. Brown, William T. Garland, Jay Hyde, Mrs. Edna McEwen, Dr. Ray M. Pisano and Thomas Tang, as Mayor and Members of the City Council of The City of Phoenix, Appellees.

No. 7724.

Supreme Court of Arizona.

In Banc.

Nov. 30, 1966

Kramer, Roche, Burch & Streich, Mark I. Harrison, Phoenix, for appellant.

Merle L. Hanson, City Atty., Robert J. Backstein, Asst. City Atty., for appellees.

BERNSTEIN, Vice Chief Justice.

Appellant, Ella L. Robinson, appeals from a trial court judgment denying her mandamus relief for the issuance of building permits from the City of Phoenix. This appeal raises questions concerning (1) the power of the Maricopa County Board of Supervisors over the platting and recording of subdivisions, within three miles of the corporate limits of the City of Phoenix, and (2) the meaning of certain provisions of the zoning ordinances of Maricopa County and the City of Phoenix.

For convenience the parties will be designated as follows: the appellant, Ella L. Robinson, will be referred to as the plaintiff. The appellees, C. F. Lintz, Superintendent, Division of Building Inspections, City of Phoenix, and Samuel Mardian, Jr., Mayor, Dr. Preston T. Brown, William T. Garland, Jay Hyde, Mrs. Edna McEwen, Dr. Ray M. Pisano and Thomas Tang, as

Mayor and Members of the City Council of the City of Phoenix will be referred to as the defendants. The Maricopa County Board of Supervisors will be referred to as the Board, and the Maricopa County Zoning Commission as the Commission. The City of Phoenix will be referred to as the City.

On July 3, 1961 plaintiff filed with the Board a plat of her proposed subdivision of land situated in an unincorporated area within three miles of the corporate limits of the City. Under the provisions of the County Zoning Ordinance then applicable, the area which included the land of the plaintiff was zoned "Rural". The minimum permissible lot size in the "Rural" classification was 7,000 square feet, and the proposed lots in the plaintiff's subdivision complied with this requirement.

Prior to the filing of the plaintiff's subdivision plat a neighboring property owner had petitioned the Commission to seek a change of zoning under which the minimum lot size would be increased in the area to one acre. Public hearing on this proposed zoning change was set by the Commission for September 21, 1961. In the interim, plaintiff secured tentative Commission approval of her plat on July 20, 1961.

On September 21, 1961, the Commission unanimously approved the proposed zoning change and forwarded it to the Board. Having recommended this change, the Commission decided, on October 5, 1961, to hold plaintiff's subdivision matter in abeyance pending the outcome of the zoning case before the Board, notwithstanding that plaintiff had met all qualifications necessary for final approval of her plat by September 28, 1961. Plaintiff then submitted an executed copy of her plat to the Board, demanding that it be approved and forwarded for recording at the next regular meeting. Though plaintiff asserted that all requirements for approval and recording had been met and that neither the Commission nor the Board could withhold approval and delay recording because of the pending change of zoning, the Board decided to take the plat under advisement and to await the outcome of the zoning case.

On October 13, 1961 plaintiff filed an action in Superior Court seeking to compel the Board to approve and transmit her plat for recording and on December 27, 1961 the court held that she could record her plat without the approval of the Board since the Board had no authority to approve or disapprove her subdivision plats. Plaintiff recorded her plat on December 29, 1961.

On January 22, 1962 the Board approved the requested zoning change, thus requiring a minimum lot size of one acre. The land was annexed by the City on or about February 20, 1962, and on March 2, 1962 the City Zoning Commission recommended a continuation of County zoning, a recommendation officially approved by the City on April 17, 1962. Meanwhile, on March 14, 1962 plaintiff had applied to City officials for the issuance of building permits on the lots in her subdivision. Permits were refused for failure to comply with the City Zoning Ordinance. On March 27, 1962 plaintiff commenced the present action seeking to compel the defendant C. F. Lintz to issue building permits. Plaintiff contends that by recording her plat she had acquired "legally established" lots within the meaning of the County Zoning Ordinance at a time when the area was zoned "Rural", that such classification permitted lots considerably smaller than one acre, and that lots legally established under County jurisdiction were legally established building lots in the City in accordance with City Ordinance § 400(c). From the trial court's finding that she had not acquired legally established subdivision lots, plaintiff takes this appeal.

A denial of plaintiff's application for the building permits in question for failure to comply with the regulations of the new zoning ordinance adopted by the Board in January of 1962 necessarily requires a finding that the ordinance applies to, and acts as a restriction on the plaintiff's subdivided plat. It is with this finding that the plaintiff takes issue.

In this regard, the Maricopa County Zoning Ordinance, Article 10, Section 1(A) (2) (a) provides:

"(2) *Lot Area and Dimensions*

(a) Any substandard lot, either as as to dimensions or area for the district in which it is located, that was *legally established* as such when the same came under the influence of the minimum regulations of such district shall be considered as a legal lot in that district; * * *" (Emphasis supplied).

The plaintiff's 7000 square foot lots were clearly "substandard" under the January, 1962 ordinance requiring that the lots be at least one acre in area. Her development plan also failed to meet the minimum setback standards included in the same ordinance. Unless the plaintiff's lots fall within the exception provided for "legally established" lots, therefore, the City Building Inspector was justified in denyiing the requested building permits. It is to this latter question that we now turn.

On May 1, 1958 the Board passed a resolution purportedly giving it authority over the platting and recording of subdivisions by requiring Board approval of all subdivision plans before they could be recorded in the County Recorder's Office. The significant portions of that resolution read as follows:

"Whereas, it has become apparent that overall planning and zoning in the County of Maricopa cannot successfully be carried on without a complete control by this Board * * * of all subdivisions of land carried on in the unincorporated areas of the County.

"NOW, THEREFORE, be it resolved * * * that no plat or map of subdivided lands in the unincorporated areas of Maricopa County shall be filed in the office of the County Recorder unless such map or plat has been first approved by the Board * * * and such map or plat signed by the Chairman of the Board * * *.

"* * * that no such subdivision map or plat shall be approved by the Board * * * unless such map or plat has been presented to the County Planning and Zoning Commission for their study and recommendation to the Board of Supervisors."

The defendant maintains that this Resolution makes Board approval of a subdivision plat necessary before subdivision lots can be deemed to be "legally established" within the purview of Article 10 of the County Zoning Ordinance, supra. The plaintiff disagrees with this position on the grounds that the Board is entirely lacking the authority to require such approval. If the Board in fact did not have such authority, it would hardly be in a position to declare that a subdivision plat had to be approved by the Board in order for the lots to be legally established.

The applicable statutes of Arizona do not give any express grant of power to a board of supervisors over the platting and recording of subdivisions. Defendants do not argue to the contrary, but rather direct our attention to A.R.S. § 11–802. This statute, granting the county boards of supervisors power over matters of planning and zoning in their respective counties, provides as follows:

"The board of supervisors of a county, in order to conserve and promote the public health, safety and general welfare, and in accordance with the provisions of this chapter, may plan and provide for the future growth and improvement of the area under its jurisdiction, and coordinate all public improvements in accordance therewith, form a planning and zoning commission to consult with and advise it regarding matters of planning and zoning, and in the manner provided in this chapter, adopt and enforce such rules, regulations, ordinances and plans as may apply to the development of the area under its jurisdiction."

Defendants contend that from the broad wording of this statute a power to approve subdivision plans before recording may be implied. Such a finding, however, would conflict with this court's prior decisions

declaring that a board of supervisors had only such powers as are expressly conferred by statute. Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101; Hartford Accident & Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328. In Hart, supra, we concluded that the law making powers of the county, unlike the law making powers of the legislature, are entirely derivative, and as a result the County Board of Supervisors could exercise only those powers specifically ceded to it by the legislature.

In the present instance, not only had the legislature not specifically ceded such powers to the Board, but our statutes indicate that indeed the legislature had the very opposite intent. A.R.S. § 9–474 and § 9–475 provide that any plan for the subdivision of land if "within three miles from the corporate limits of a city or town *having an ordinance establishing minimum subdivision standards and controls*" must be submitted to the county board of supervisors for approval before it may be transmitted to the county recorder for filing. It is clear that the legislature intended to limit the board of supervisors power solely to instances where a city has presently established subdivision regulations. In fact A.R.S. § 9–474 was specifically amended in 1958 to so provide. The legislature was most obviously concerned with a means of giving substance to city zoning regulations already in effect, and not in giving the boards of supervisors a wholesale approval power whether there be zoning regulations or not. Thus, it seems clear that the Board was acting directly contrary to the legislature's expressed intent when it adopted its Resolution in 1958 purporting to give it approval power over subdivision plans when at that time Phoenix had no ordinance establishing either minimum subdivision standards or controls. Nor did Phoenix have any such standards in 1961 when the Board attempted to enforce its self-proclaimed approval power at the hands of the plaintiff.

The shocking consequences of a finding that the Board possessed such unshackled authority is well illustrated by the facts of the present case. Here the Board held action on the plaintiff's submitted subdivision plan in abeyance pending future consideration of a proposed zoning change despite the fact that the plan complied completely with the zoning ordinance then in existence. Nearly four months passed between the time that the subdivision plan was presented to the Board and the time that the Board finally made a decision on the proposed zoning change. If the Board is deemed to have authority to detain development of one's land for this length of time what is to prevent it from holding a landowner in absolute limbo for a year or two while the landowner pays taxes, pays interest on normally large loans for proposed developments, and watches contemplated benefit from his original investment and subdivision program dissolve into nothingness. It is evident that the legislature foresaw this possibility when it passed A.R.S. §§ 9–475 and 9–478 imposing time limits on the exercise of the approval power established in § 9–474.

An additional reason for not sanctioning implied powers in a zoning board was expressed by this court in the case of Kubby v. Hammond, 68 Ariz. 17, 198 P.2d 134, where we said:

"Zoning Ordinances, being in derogation of common law property rights, will be strictly construed and any ambiguity or uncertainty decided in favor of property owners."

This reasoning is likewise applicable to the statutes which grant the legislative power for adopting such zoning ordinances and a finding of an implied power under the circumstances would be in strict derogation of its principles.

Because we hold that the Board was lacking authority to pass the Resolution of 1958 it cannot be considered to set the standard for "legally established lots" within the meaning of Article 10 of the County Zoning Ordinance. It still remains to decide whether recording accomplishes this end. We are of the opinion that it does.

It is generally recognized that the act of recording one's subdivision plat legally establishes each lot therein as to size and description.[1] American Community Builders v. City of Chicago Heights, 337 Ill.App. 263, 85 N.E.2d 837. Northern Indiana Public Service Co. v. McCoy, 239 Ind. 301, 157 N.E.2d 181. And see Kirchin v. Remenga, 291 Mich. 94, 288 N.W. 344. In the McCoy case the court said:

"Until the plat is recorded as provided by statute, a prospective purchaser has no assurance that a subdivision will ever be established, and the lots and streets shown thereon are nothing more than lines on paper. The act of recording brings the subdivision into being and makes of it a reality instead of a mere outline on paper of a tentative proposal of the subdivider." 157 N.E.2d 181, 184.

Also until the plat has been recorded there can be no assurance that there will not be a change in the size of the lots, layout of streets and alleys, restrictions and dedications, if any, or the use and purpose of the subdividing.

■ We find that, in the absence of any express statutory requirements, as soon as a plat is properly recorded, the lots therein become "legally established" within the meaning of both the zoning ordinance and common understanding. As we have said before, this court will interpret a statute (or ordinance) in such a way to give it a fair and sensible meaning. State ex rel. Morrison v. Jay Six Cattle Co., 85 Ariz. 220, 335 P.2d 799.

A basic sense of justice and a security of one's rights in property require that at some definite point in time a property owner should know how he may subdivide his property. An acknowledgement of recording as establishing a right to act upon subdivision plans complying with zoning regulations then in existence provides this invaluable certainty. It also takes into account principles of equity, as it is at the point of recording that the subdivider has necessarily incurred the expense of numerous surveying and legal fees in reliance on the ordinance then in effect. Under the circumstances, we believe that any other standard for determining a lot to be "legally established" would be impractical and arbitrary.

■ It is contended by defendant that in the event the plaintiff is not found to be in violation of the County regulations, then he is nevertheless in violation of the City regulations as adopted by the City upon annexation. City Zoning Ordinance No. G–499, section 106 (c) (1). We find no merit in this contention. City Zoning Ordinance section 400 (c) contains the same "legally established" language as the County ordinance, Article 10, supra, and there is no reason for interpreting it any differently.

■ Defendant contends that the plaintiff is precluded from bringing her action to the courts on the ground that she has failed to exhaust available administrative remedies. This objection was not raised before the trial court and consequently need not be considered on appeal. Schecter

---

1. That the legislature also considers the act of recording to be of extreme significance in the area of zoning is apparent in both A.R.S. § 9–475 and § 9–478 (which are otherwise inapplicable in this case because of reasons already explained, supra).

A.R.S. § 9–475, subsec. B provides "Upon the hearing, if it appears to the board that the plat or map reasonably conforms to legal requirements it shall approve and endorse the approval upon the plat or map and transmit it to the county recorder of the county for filing."

A.R.S. § 9–478 provides "No plat or map shall be accepted by the county recorder for filing unless it complies with the provisions of this article, but if an owner has given to a city or town written notice of intention to subdivide and the city or town has failed or refused within the time specified in this article to project the lines of its streets and alleys and to supply the courses thereof, then the owner may file with the county recorder the plat or map of the subdivision in conformity with law, attaching thereto the sworn statement of the owner of the proceedings."

v. Killingsworth, 93 Ariz. 273, 380 P.2d 136; City of Yuma v. Evans, 85 Ariz. 229, 336 P.2d 135.

Our conclusion that the Ordinance is inapplicable to the plaintiff makes unnecessary a consideration of the constitutionality of the zoning change. We hold that the plaintiff was entitled to a building permit.

Judgment reversed.

STRUCKMEYER, C. J., and LOCKWOOD and McFARLAND, JJ., concur.

UDALL, Justice:

I concur in part and dissent in part.

I concur with that portion of the majority opinion in which it is recognized that A.R.S. § 9–474 and succeeding statutes expressly confer, upon a board of supervisors, the power to approve subdivision plats before such plats are recorded. However, I think that the present significance of this fact is concealed by the manner in which the language of the majority opinion refers to the statutes. If reference is to be made to them in this opinion I think that the reference should go further and make it clear that an expressly granted power of approval presently exists, as a result of the following described circumstances.

From 1958 to 1962 the power of approval expressly granted in A.R.S. § 9–474 was, in effect, suspended because the statute was amended so as to be applicable only if a city had an ordinance establishing minimum subdivision requirements. In 1958 the City of Phoenix did not have such an ordinance. However, the city did adopt a subdivision ordinance in August of 1962 (Ordinance No. G–477). Consequently, since 1962 and presently, under the express provisions of A.R.S. § 9–474 and § 9–475, a plat of a proposed subdivision of land within three miles of the corporate limits of the city, must be submitted for approval by Maricopa County Board of Supervisors before it is recorded.

Of course, in the case presently under consideration, the board of supervisors could not have acted under A.R.S. § 9–474

and § 9–475 because, as indicated above, the power of approval expressly granted by those statutes was effectively suspended until 1962, as a result of the 1958 amendment of A.R.S. § 9–474.

With further reference to the above mentioned statutes, and A.R.S. § 9–478, I cannot agree with the majority opinion insofar as it interprets the statutes as imposing a time limit upon the exercise of the board's power of approval.

A.R.S. § 9–475 provides as follows:

"A. One copy of the plat or map shall be filed with the city or town and the other copy with the board of supervisors of the county in which the subdivision is situated, to which shall be attached the petition of the owner praying for the approval of the plat or map.

"B. The board of supervisors shall set the petition for hearing not less than fifteen and not more than thirty days from the date of the filing of the plat or map and petition with the board, and shall cause written notice thereof to be given to the governing body of the city or town. The city or town may appear at the hearing and show cause why the petition should not be granted. *Upon the hearing, if it appears to the board that the plat or map reasonably conforms to legal requirements it shall approve and endorse the approval upon the plat or map and transmit it to the county recorder of the county for filing.*"

With regard to the board's power to withhold approval for an excessively long period of time, the opinion of the majority states:

"It is evident that the legislature foresaw this possibility when it passed A.R.S. §§ 9–475 and 9–478 imposing the time limits upon the approval power established in § 9–474."

In view of the wording of A.R.S. § 9–475, quoted above, I do not see how the majority of the Court can interpret the statute as imposing a time limit upon the exercise of the power of approval. The statute states that a hearing shall be held

within not more than thirty days after filing of the plat and petition. It seems quite unreasonable to construe this wording as a limitation upon the ultimate power of approval, for the last sentence of § 9–474 clearly implies that the board may withhold its approval, presumably for any reasonable length of time, when it finds that the plat does not reasonably conform to legal requirements.

Inasmuch as the majority opinion also intimates that A.R.S. § 9–478 imposes a limitation upon the board's power of approval, the precise wording of this statute should be examined also. It provides:

"No plat or map shall be accepted by the county recorder for filing, unless it complies with the provisions of this article, but if an owner has given to a city or town written notice of intention to subdivide and the city or town has failed or refused within the time specified in this article to project the lines to its streets and alleys and to supply the courses thereof, then the owner may file with the county recorder the plat or map of the subdivision in conformity with law, attaching thereto the sworn statement of the owner of the proceedings."

I cannot see how this statute limits the approval power of a board. It specifically states that no plat shall be accepted for recording unless it complies with the provisions of the entire article. One of the provisions of the article is that the approval of the board of supervisors shall be endorsed upon the plat. Although § 9–478 precludes the necessity of city action, under the specified conditions, the statute does not suggest to me that the necessity of obtaining board approval before recording is in any way abolished or limited.

An additional issue, with regard to which I must express my disagreement with the opinion of the majority, concerns the question of whether a board of supervisors possesses implied powers.

By reference to Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101, the majority concludes that a board

of supervisors has only such powers as are expressly conferred by statute, notwithstanding the fact that in a considerable number of opinions in the past, this Court has stated that a board possesses those powers which are expressly granted and those necessarily implied therefrom, or those necessary to carry out expressly granted powers. Bone v. Bowen, 20 Ariz. 592, 185 P. 133; Board of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343; Maricopa County v. Southern Pacific Company, 63 Ariz. 342, 162 P.2d 619; Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041; Peters v. Frye, 71 Ariz. 30, 223 P.2d 176.

Although the Hart case, supra, is the latest one dealing with the extent of a board's power, I do not think that it either expressly or by implication overrules the statements in prior cases to the effect that a board possesses implied powers. In fact, in the Hart case, after the statement that a board has only specifically ceded powers, a presumably supporting citation is made to Board of Supervisors of Apache County v. Udall and Associated Dairy Products Co. v. Page, both supra, and in both of these cases the actual statement of the court is to the effect that a board also possesses powers necessarily implied or necessary to carry out express powers. It should also be noted that in the Hart case the question before the Court was not whether implied powers existed or could be exercised, but rather whether the board had effectively exercised an express power.

It is clear to me that a board of supervisors must necessarily possess powers other than those specifically ceded. Otherwise, the conclusion seems inevitable that at times the legislature has purportedly conferred powers by statute, but at the same time actually intended not to confer any power. The present case affords an excellent example of such a statute, A.R.S. § 11–802, quoted in the opinion of the majority. As I interpret this statute it purportedly grants very broad powers over

matters of planning and zoning in the county. It would not be logical to expect the legislature to designate specifically each particular instance in which a board could assume or assert authority in carrying out its planning and zoning functions. The legislature did not attempt to do so when it enacted § 11–802, and by extending broad powers has necessarily left to implication a determination of the specific areas in and over which a board may exercise its authority. When for example, by the language of § 11–802, a board is empowered to " * * * plan and provide for the future growth and improvement of the area under its jurisdiction, and coordinate all public improvements in accordance therewith * * *", the only reasonable conclusion is that a power has been conferred, and because that power is very general, it seems equally inevitable that it must be left to the process of implication to determine what is specifically included within the grant. The alternative to this conclusion is that the legislature actually did not intend to confer any power upon a board by the use of such language. If such had been the legislative intent, the result could have been more easily and certainly reached by simply not using the language, which either grants power by implication, the specific nature of which remains to be determined, or which grants no power at all, in which case there remains no reasonable explanation of why the language was used in the statute.

I think that the present case affords an excellent example of a situation in which it could reasonably be held that a board has an implied power in the area of planning and zoning. Although a board's power to approve subdivision plats is now specifically provided for in A.R.S. § 9–474, and such power was specifically suspended from 1958 to 1962, so as to make improper the finding of an approval power by implication in those years, *if* the matter was not presently covered by statute, I think that it could reasonably be implied, from the broad grant of power (in A.R.S. § 11–802) to plan and coordinate future develop-

ments in county areas, that a board could assume a power to approve subdivision plats and exercise that power in a manner calculated to resolve effectively the conflicts which may arise from time to time between the interests which clash when zoning and subdividing problems coincide, as they have in the present case.

I cannot believe, that when the legislature granted the power expressed in A.R.S. § 11–802, that it did, at the same time, intend to place a board in a position where it could effectively plan for future growth and development. Yet, the planning power is frustrated if a subdivider can plan his development according to his whim and by recording, without the approval of the board, fix his rights with no consideration having been given to the rights of other property owners in the vicinity or to those many factors which should be taken into consideration when the future growth and development of an area is being considered. If necessary, I would find that a board has, by implication, the power to approve subdivision plats before they are recorded. However, as noted previously, since the matter is specifically covered by statute, it is unnecessary to find that such a power exists presently by implication.