581 P.2d 1143

Kendall DAWE and Mildred M. Dawe, his wife, Appellants,

v.

CITY OF SCOTTSDALE, Arizona, a Municipal Corporation, Appellee.

No. 1 CA–CIV 3302.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 14, 1978.

Burch, Cracchiolo, Levie, Guyer & Weyl, P.A. by C. Michael Pierce, Arda S. Rutherford, Phoenix, for appellants.

Richard R. Filler, Scottsdale City Atty., Scottsdale, for appellee.

## OPINION

FROEB, Chief Judge.

This case deals with the rights created by the recordation of a plat subdividing land into lots. The specific question is whether a zoning change taking place after the plat is recorded can require that the land subject to the plat be developed or sold only in larger sized lots prescribed by the zoning change.

The property which is the subject of this lawsuit was platted and recorded as Palo Verde Terrace in Book 88 of Maps at page 7 of the records of Maricopa County on February 24, 1960. It consists of 120 contiguous lots intended for residential use. The property is still vacant and unimproved. The appellants, Kendall Dawe and Mildred Dawe, are the successors in interest to the owner at whose instance the subdivision was recorded. The record does not indicate when the Dawes became owners of the property, but we do not view this as material.

The plat in question provided for 10,000 square foot lots and private streets. When the plat was recorded, the land was located in an unincorporated area of Maricopa County, which was then, for reasons we hereafter explain, not subject to any zoning. Prior to the recording of the subdivision, the Maricopa County zoning ordinance

zoned the land for minimum lot sizes of either 35,000 or 43,000 square feet. The Arizona Supreme Court declared this zoning ordinance invalid in *Hart v. Bayless Investment & Trading Co.,* 86 Ariz. 379, 346 P.2d 1101 (1959), which became final on January 12, 1960. The County thereafter adopted another zoning ordinance which took effect on February 27, 1960. During the short interval various subdivision plats were recorded, Palo Verde Terrace being one of them. County approval of the plats during this period was not required. The ordinance of February 27, 1960, provided for one-acre-lot zoning. In 1963 the City of Scottsdale annexed the area where the subdivision is located. The Scottsdale zoning ordinance in effect at the time this suit was filed provided for lots with a minimum of 35,000 square feet.

The present lawsuit arose when they City of Scottsdale refused building permits to the Dawes. They then filed an action for declaratory judgment that the Palo Verde Terrace subdivision was legally established; that the annexation and ordinance changes after recordation did not affect the validity of the plat nor the owner's right to develop the lots as recorded; that the owners were entitled to build on the lots by complying with ordinances applicable to all lots of the same size within the City, and for an order directing the City to issue building permits for the lots. Following the submission of the Dawes' motion and the City's cross-motion for summary judgment, the trial court denied the relief sought by the Dawes and they appeal.

■ The issue is whether the valid recordation of a subdivision plat establishes the owner's right to develop the lots as platted regardless of subsequent zoning changes. We decide this issue by holding that the subdivision plat prevails against subsequent zoning change, a result which we think is compelled by the only Arizona Supreme Court case dealing with the subject, namely, *Robinson v. Lintz,* 101 Ariz. 448, 420 P.2d 923 (1966).

Since the parties to the present case disagree as to the significance of *Robinson* as a precedent in Arizona, the facts of *Robinson* require discussion. On December 29, 1961, the landowner recorded a plat of a proposed subdivision of land lying in an unincorporated area of Maricopa County. At the time, the land was zoned "rural" under the county zoning ordinance which allowed a minimum lot size of 7,000 square feet. On January 22, 1962, the Maricopa County Board of Supervisors passed an amendment to the zoning ordinance changing the minimum lot size of the area in which the subdivision was located to one acre. On or about February 20, 1962, the land was annexed to the City of Phoenix and, by official action of the City on April 17, 1962, the one-acre zoning was continued in effect. Meanwhile, on March 14, 1962, the landowner applied to the City for issuance of building permits on the subdivision lots. The application was denied on the ground that the lots did not comply with the one-acre zoning ordinance. In the court action which followed, the landowner argued that she came within the exemption for substandard-sized lots because the lots were "legally established" by the proper recordation of the subdivision plat prior to the change in zoning. The city officials contended that the subdivision lots were not "legally established" because the Maricopa County Board of Supervisors had not approved the plat before it was recorded. The substandard lot exemption found in the Maricopa County zoning ordinance applied to lots which were "legally established" prior to the zoning change. The exemption was continued in effect by the City of Phoenix zoning ordinance. In deciding that the subdivision plat was "legally established," the Supreme Court ruled first that there was no legal requirement that it be first approved by the Board of Supervisors. It then ruled that recordation of the subdivision "legally established" each lot as to size and description. The court quoted from *Northern Indiana Public Service Co. v. McCoy,* 239 Ind. 301, 307, 157 N.E.2d 181, 184 (1959):

Until the plat is recorded as provided by statute, a prospective purchaser has no

assurance that a subdivision will ever be established, and the lots and streets shown thereon are nothing more than lines on paper. The act of recording brings the subdivision into being and makes of it a reality instead of a mere outline on paper of a tentative proposal of the subdivider. *Robinson v. Lintz,* 101 Ariz. at 452, 420 P.2d at 927.

The court went on to explain its reasoning in the following words:

We find that in the absence of any express statutory requirements, as soon as a plat is properly recorded, the lots therein become "legally established" within the meaning of both the zoning ordinance and common undering. As we have said before, this court will interpret a statute (or ordinance) in such a way to give it a fair and sensible meaning (case citation omitted).

A basic sense of justice and a security of one's rights in property require that at some definite point in time a property owner should know how he may subdivide his property. An acknowledgement of recording as establishing a right to act upon subdivision plans complying with zoning regulations then in existence provides this invaluable certainty. It also takes into account principles of equity, as it is at the point of recording that the subdivider has necessarily incurred the expense of numerous surveying and legal fees in reliance on the ordinance then in effect. Under the circumstances, we believe that any other standard for determining a lot to be "legally established" would be impractical and arbitrary. *Id.*

■ We read *Robinson* and the quoted language to stand for the proposition that the owner of one or more subdivision lots has a vested right in the size of the lot or lots when the subdivision plat has been validly recorded. It follows that a change in the zoning ordinance affecting the minimum size of the lot cannot alter this right.

■ The City argues two points in urging us to find that the land involved is subject to the Scottsdale zoning ordinance as to lot size. First, it contends that *Robinson* is not controlling because the Scottsdale zoning ordinance differs from the zoning ordinance in *Robinson.* While the ordinances do establish different tests for determining which nonconforming or substandard lots shall be exempt,[1] the issue here is not whether the Dawes can come within an exemption to the zoning ordinance, but whether the zoning ordinance can override the recorded subdivision plat and require the land to be divided into larger lots. In other words, if the zoning ordinance cannot affect the lot size, the Dawes do not need to rely upon an exemption to validate the lots as platted. As this is the case, *Robinson* is not rendered inapplicable because of differing exemption provisions and the City's first argument fails.

The second point urged by the City goes more to the fundamental question whether and to what extent vested rights arise from the recordation of a subdivision plat.

The City contends that rights arising from recordation of a subdivision plat are in the same category as rights arising from enactment of a zoning ordinance. As support for its contention the City cites 3 A. Rathkopf, *The Law of Zoning and Planning* at 71–93 (3d ed. 1956):

[T]here are analogies between the law relating to subdivisions and the law of zoning. One area in which the principles governing cases in both fields are the same is that concerning vested rights; whether the subdivider has the right to continue the development of his subdivision as planned in the face of changed rules and regulations of the planning board, or an amendment to the zoning ordinance which changes the permitted uses of the nonuse restrictions of land

---

1. In summary, the exemption for nonconforming or substandard lots in *Robinson* only required that the lots be "legally established" prior to the effective date of the zoning. The Scottsdale ordinance in the present case required not only that the lot be "legally established," but also that it be "in separate ownership." The City argues that the Dawes do not qualify because they owned not one but all the lots in the subdivision.

covered by the plat, is in great measure governed by the same considerations which determine vested rights under a building permit.

The City further quotes:

But, similar to the vested rights which accrue to a property owner whose position has been changed in reliance upon the issuance of a building permit, vested rights may be secured by a subdivider in a particular subdivision plat where his position has been changed by installation of improvements or otherwise in reliance upon the grant of final approval thereof. *Id.* at 71–102.

The City points out that, except for the preparation of the plat, neither the Dawes nor their predecessors incurred any expenditures in reliance upon the recorded plat. It argues that the Arizona cases dealing with zoning changes require the owner to have made, in good faith, substantial expenditures in reliance upon existing zoning before he will be considered as having a vested right to it. The City refers us to *Verner v. Redman,* 77 Ariz. 310, 315, 271 P.2d 468, 471 (1954) in which our Supreme Court stated:

We hold that where the amount of work done is of small consequence as here, appellants acquired no vested right to complete the construction of such buildings, and having acquired no vested right, the Board of Supervisors had the power to rezone said property changing its classification from commercial to residential A.

■ The *Robinson* case indicates that the recordation of a subdivision plat is not in the same category as zoning and, therefore, we reject the City's argument. Zoning is a legislative act classifying the use of the land for the community good. Zoning may change as community needs develop. The landowner cannot claim a vested right in the continued existence of such legislation unless he has made actual use of the property. On the other hand, the recordation of a subdivision plat, under circumstances such as are present here, is the exercise of a private right authorized by state law. Zoning gives a landowner potential rights which may never arise unless they are exercised; the recordation of the subdivision is the actual exercise of a right which the law will protect.

As the City points out, this view of the effect of recording a subdivision plat is not shared by most jurisdictions. *See, e.g., Sherman-Colonial Realty Corp. v. Goldsmith,* 155 Conn. 175, 230 A.2d 568 (1967) and *R. A. Vachon & Son, Inc. v. City of Concord,* 112 N.H. 107, 289 A.2d 646 (1972). Our view might well be different but for the decision in *Robinson,* but since our Supreme Court has spoken on the subject, we follow its holding.

The effect of recording a subdivision plat is a matter which should be regulated by appropriate legislation. If a recorded subdivision could be overridden by zoning changes, landowners seeking to develop their property would face considerable uncertainty between the time the subdivision plat is recorded and the time actual construction began. As an answer to this problem some states have provided that the landowner can build for a given number of years, perhaps three or five, following "final approval," after which the plat is no longer immune from zoning changes. Whether a county or a municipality, under current subdivision law in the State of Arizona, may provide, through its ordinances, a period of time during which an approved and recorded subdivision plat is immune from zoning changes is not before us.

For the reasons set forth, we reverse the judgment of the trial court and direct it to enter a judgment in favor of appellants which will provide that the lots in Palo Verde Terrace Subdivision may be developed or sold as platted. We point out that the issue before us involves only the protection of the size of the lots set forth in the recorded subdivision plat. We shun any speculation on the extent to which the City may by ordinance impose other regulatory burdens upon the land in question.

NELSON, J., concurs.

HAIRE, Presiding Judge, dissenting:

The majority opinion holds that once a subdivision plat is validly recorded, the right of the landholder to develop the land in accordance with the lot sizes shown on the plat becomes permanently and irrevocably vested, and can never be changed by subsequent enactment or amendment of the governing agency's subdivision or zoning ordinances. The majority recognizes that the result it reaches is not shared by most other jurisdictions, and states that "our view might well be different but for the decision in *Robinson*,[1] but since our Supreme Court has spoken on the subject, we follow its holding." Since, in my opinion, the majority has misinterpreted the issue involved in *Robinson,* I respectfully dissent.

In *Robinson,* the Arizona Supreme Court was not required to, and did not, reach the abstract question of whether the vested rights of a subdivider in a validly recorded subdivision were absolute and therefore not subject to subsequently enacted zoning or subdivision ordinances. All that Robinson involved was an interpretation of an exception clause contained in the zoning ordinances which were applicable to plaintiff Robinson's property. This exception clause excluded from the zoning ordinance's lot size restrictions, lots which were "legally established as such when the same came under the influence" of the zoning ordinance's minimum lot size restrictions. As stated by the court in *Robinson:*

"Plaintiff contends that by recording her plat she had acquired 'legally established' lots within the meaning of the County Zoning Ordinance at a time when the area was zoned 'Rural', that such classification permitted lots considerably smaller than one acre, and that lots legally established under County jurisdiction were legally established building lots in the City

in accordance with City Ordinance § 400(c).

\* \* \* \* \* \*

"Unless the plaintiff's lots fall within the exception provided for 'legally established' lots, therefore, the City Building Inspector was justified in denying the requested building permits. It is to this latter question that we now turn." 101 Ariz. at 449, 450, 420 P.2d at 924, 925.

The court then discussed the term "legally established" as used in the exception clause, and determined that within the meaning of that clause, the plaintiff's subdivision plat was "legally established" when it was initially recorded, and that approval of the Board of Supervisors was not required, stating:

"We find that, in the absence of any express statutory requirements, as soon as a plat is properly recorded, the lots therein become "legally established" within the meaning of both the zoning ordinance and common understanding. As we have said before, this court will interpret a statute (or ordinance) in such a way to give it a fair and sensible meaning." 101 Ariz. at 452, 420 P.2d at 927.

From the foregoing it is apparent that the Arizona Supreme Court in *Robinson* did not purport to rule upon the question of what the plaintiff's rights would have been were it not for the exception clause there involved.[2]

Since the Arizona Supreme Court has not spoken upon the issue presented in this case, I would affirm the trial court's holding that under the facts of this case, appellants were not entitled to develop their subdivision lots in contravention of the lot size restrictions set forth in the city's subsequently enacted zoning ordinances.

---

1. *Robinson v. Lintz,* 101 Ariz. 448, 420 P.2d 923 (1966).

2. As indicated above, the Arizona Supreme Court stated in *Robinson* that the City Building Inspector would have been justified in denying the requested building permits if the plaintiff's

lots did not fall within the exception provided in the zoning ordinance. This indicates an interpretation contrary to that urged by the majority, but since it is *dicta,* I do not argue that it constitutes Arizona Supreme Court precedent mandating the result urged in this dissent.